LINDA A. CARLTON, Plaintiff-Appellant v. GREG CARLTON, Defendant-Appellee

No. COA00-861

(Filed 7 August 2001)

**Child Support, Custody, and Visitation— custody—modification of order—affect of changed circumstances on welfare of child**

The trial court erred by modifying a child custody order based upon defendant's move to Hawaii and plaintiff's absconding with the child where there were insufficient findings that the change of circumstances affected the child's welfare.

Judge EAGLES concurring.

Judge TYSON dissenting.

Appeal by plaintiff from order entered 28 March 2000 by Judge Robert E. Hodges in District Court, Catawba County. Heard in the Court of Appeals 21 May 2001.

*Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by J. Scott Hanvey, for plaintiff-appellant.*

*Sigmon, Sigmon and Isenhower, by C. Randall Isenhower, for defendant-appellee.*

McGEE, Judge.

This is an appeal by plaintiff from an order modifying a prior custody order based upon change of circumstances. Linda A. Carlton (plaintiff) and Greg Carlton (defendant) are the parents of Angela Margaret Carlton (Angela), who was born 29 May 1989. Plaintiff and defendant were divorced on 19 January 1994 and plaintiff and defendant were granted joint custody of Angela, with physical custody being alternated between them on a weekly basis.

Defendant moved to Atlanta, Georgia in 1996. Because of defendant's move to Atlanta, plaintiff filed a motion in the cause on 14 August 1996, seeking modification of the 19 January 1994 child custody order, requesting exclusive custody of Angela, or in the alternative, primary physical custody of Angela. The record shows the issues of custody and visitation were referred to mediation but the parties were unsuccessful in reaching an agreement.

CARLTON v. CARLTON

[145 N.C. App. 252 (2001)]

Defendant filed a motion in the cause on 26 February 1998 requesting that he be awarded custody of Angela. In his motion, defendant alleged substantial change of circumstances including plaintiff's unstable employment record, Angela's poor performance in school, plaintiff's insufficient supervision of Angela's homework, and Angela's "inordinate number" of absences and tardiness which he alleged placed her in jeopardy of having to repeat the third grade. On 10 June 1998, plaintiff filed a supplemental motion relating to support of Angela and requesting primary custody.

A hearing on the pending motions in the cause was held on 10 June 1998 and the original joint custody order was modified in an order entered on 22 July 1998, *nunc pro tunc* to 3 July 1997. The trial court concluded that Angela's performance at school was declining, that defendant had relocated to Atlanta, and that these were substantial changes of circumstance. The court ordered that plaintiff and defendant be given joint custody of Angela with physical custody being alternated between them every two weeks. In accordance with this order, plaintiff was to turn over physical custody of Angela to defendant on 13 July 1998. Plaintiff failed to return Angela to defendant and on 14 July 1998 an order was filed directing plaintiff to return Angela immediately to defendant. In response to plaintiff's failure to return Angela to him, defendant filed a motion for contempt and for immediate custody on 22 July 1998. The trial court entered a show cause order and an immediate temporary custody order granting defendant temporary custody of Angela and ordered plaintiff to return Angela to defendant. On 4 August 1998 defendant was granted temporary, exclusive custody of Angela. On 17 September 1998, defendant filed a motion in the cause seeking permanent exclusive custody of Angela. In September 1998, plaintiff returned with Angela to Catawba County. Plaintiff later testified that, based on information from her older sister, she feared defendant was planning to murder her and thus plaintiff decided to take Angela out of the county. Plaintiff and Angela lived with plaintiff's sister and in a series of protective shelters.

Subsequent temporary orders were entered setting forth specific visitation schedules. Plaintiff was allowed supervised visitation with Angela and defendant retained temporary exclusive custody. The trial court granted plaintiff the right to unsupervised visitation with Angela on 4 May 1999.

Plaintiff filed a motion in the cause on 29 June 1999 alleging a substantial change of circumstances in that defendant had moved to

CARLTON v. CARLTON

[145 N.C. App. 252 (2001)]

Hawaii, that defendant planned to take Angela to live with him in Hawaii, and that this move would greatly hinder plaintiff's rights to have regular and frequent visitation and would prevent plaintiff from maintaining a close relationship with Angela. Plaintiff requested primary physical custody of Angela during the school year, with defendant having secondary custody during the summer and school year.

In an order filed on 30 July 1999, the trial court found in part that defendant had moved to Hawaii on 22 June 1999 and that Angela was residing in the home of defendant's parents. The court further found that Angela should not go to Hawaii with defendant and granted temporary placement of Angela with defendant's parents. The trial court ordered a psychological assessment of Angela to determine any impact on her with regard to moving to Hawaii.

Following a hearing on 21 September 1999, the trial court made the following findings of fact in an order filed 1 November 1999: (1) Angela had seen a psychiatrist, but no evaluation had been submitted; (2) evidence had been presented that for the past several years Angela had at times performed poorly in school; (3) the court deemed it appropriate that a psychiatrist see Angela to assess any impact on her with regard to her moving to Hawaii and potential problems with her school work; (4) from 13 July 1998 until 17 September 1998, plaintiff kept Angela's whereabouts hidden from the court and the defendant; (5) plaintiff testified that her sister advised her that defendant and others conspired to physically harm her, and that because of this information, she concealed Angela's whereabouts; (6) plaintiff characterized her actions in hiding Angela for over two months as being in "poor judgment;" (7) while plaintiff and Angela were gone, Angela missed thirty-eight days of school; (8) when Angela returned to school, she was behind in her school work and her teacher and defendant spent additional time giving Angela extra educational instruction; (9) the court found the alleged threats to plaintiff to be totally unfounded; and (10) plaintiff acknowledged and testified that she was violating a court order by keeping Angela from defendant. The trial court concluded temporary placement of Angela with defendant's parents should continue pending further hearings. The trial court continued the hearing until 1 December 1999 in order to . receive the report of the psychiatrist. The trial court filed an order on 28 March 2000 that stated

this Order resolves all pending Motions and issues in this matter, being the Motion for Contempt and Show Cause filed by the

Defendant on July 22, 1998, the Supplemental Motion in the Cause filed by the Defendant on September 17, 1998, the Supplemental Motion filed by the Plaintiff on June 10, 1998, and that Motion in the Cause filed by the Defendant on February 26, 1998.

The order did not specifically refer to later filed motions, including the motion alleging substantial change of circumstances as a result of defendant's move to Hawaii. The trial court incorporated in its order the findings of the 1 November 1999 order and the psychiatric assessment of Angela. The trial court made these additional findings: (1) that defendant accepted employment in Hawaii and moved to Hawaii in June 1999; (2) that defendant rented a house in Hawaii which was suitable for him and Angela to live in; (3) that over the course of the years, defendant provided more assistance, and showed greater ability to help Angela in her school work; (4) that since the 3 July 1997 hearing when plaintiff had joint custody of Angela, she had numerous unexplained absences and tardiness from school; and (5) as of the date of the hearing, Angela's grades had not improved since she had been in defendant's custody, or the custody of her paternal grandparents.

Based on these findings, the trial court concluded that substantial and material changes of circumstance had occurred justifying a modification of the prior custody order granting the parties joint custody of Angela with defendant having the primary care, custody and control of Angela, subject to secondary custody and visitation of plaintiff. In addition, the court concluded that defendant was a fit and proper person to have the primary care, custody and control of Angela, and that it was in the best interest of Angela for defendant to be granted primary custody. The trial court awarded joint custody of Angela to plaintiff and defendant, with defendant having primary custody. The court further ordered that defendant enroll Angela in school in Hawaii and that plaintiff have secondary custody and visitation during summer vacations. Plaintiff appeals from the 28 March 2000 order.

Plaintiff first argues that the trial court erred in modifying custody of Angela on the grounds that the findings of fact are not based upon competent evidence that a substantial change of circumstance affecting the welfare of Angela has occurred. "Once the custody of a minor child is determined by a court, that order cannot be altered until it is determined (1) that there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in

CARLTON v. CARLTON

[145 N.C. App. 252 (2001)]

custody is in the best interest of the child." *Evans v. Evans*, 138 N.C. App. 135, 139, 530 S.E.2d 576, 578-79 (2000) (citations omitted); N.C. Gen. Stat. § 50-13.7(a) (1999). A party seeking modification of a child custody order bears the burden of proving a substantial change of circumstances has occurred which affects the welfare of the child. *See Crosby v. Crosby*, 272 N.C. 235, 237, 158 S.E.2d 77, 79 (1967). In order to meet this burden, such party must prove that " 'circumstances have so changed that the welfare of the child will be adversely affected unless the custody provision is modified.' " *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 77, 418 S.E.2d 675, 678-79 (1992) (quoting *Rothman v. Rothman*, 6 N.C. App. 401, 406, 170 S.E.2d 140, 144 (1969)). Only after evidence of a substantial change of circumstances is presented does the court consider evidence probative of the "best interest of the child" issue. *Garrett v. Garrett*, 121 N.C. App. 192, 464 S.E.2d 716 (1995). Whether there has been a substantial change of circumstances is a legal conclusion; as such, it must be supported by adequate findings of fact. *Id.* at 196, 464 S.E.2d at 719. A trial court's findings of fact "are conclusive on appeal if there is evidence to support them." *Hunt v. Hunt*, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987) (citation omitted). "However, the trial court's conclusions of law are reviewable *de novo*." *Browing v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000) (citation omitted).

In this case, defendant counters that two significant factors had occurred since the entry of the prior custody order that support the trial court's conclusion of a substantial change of circumstances: (1) plaintiff's violation of the court's order by irrationally hiding Angela from 13 July 1998 until 17 September 1998, and (2) defendant's move to Hawaii.

A majority of the trial court's 1 November 1999 findings pertain to plaintiff's decision to hide herself and Angela based on the belief of plaintiff's sister that defendant was planning to kill plaintiff. The trial court found that plaintiff's action was in violation of its order and had caused Angela to miss thirty-eight days of school, putting her behind in her school work. The trial court also found that plaintiff's belief in the alleged threats were unfounded and that plaintiff had characterized her actions as "poor judgment." However, the trial court failed to make any finding of fact regarding any effect that plaintiff's actions had on the welfare of Angela. Although the trial court found that plaintiff's hiding of Angela placed Angela behind in her school work, in the previous 22 July 1998 joint custody order, the court had already found that Angela's performance at school had not been good. The 30

CARLTON v. CARLTON

[145 N.C. App. 252 (2001)]

November 1999 psychological assessment determined that Angela had a "steady deterioration from first through fifth grade" and Angela's poor school performance was due to "[p]arental discord, weekly residential exchange [as mandated by the joint custody order] and over-involvement of her doting grandmother[.]" Defendant offered the testimony of Angela's fourth grade teacher at the 22 September 1999 hearing, and the teacher testified that Angela suffered academically because of the time she missed from school; however, Angela "passed all of her state tests" and graduated from the fourth grade on schedule. Thus, there is no evidence in the record to support the trial court's conclusion that plaintiff's hiding of Angela caused a substantial change in Angela's academic performance.

In addition, defendant testified that upon Angela's return to his exclusive temporary custody, she had lost weight but that in defendant's assessment, she was not emotionally distraught and did not need counseling. Defendant also testified that Angela's relationship to plaintiff continued to be "a good relationship" and that he trusted plaintiff to take care of Angela. Thus, there is no evidence in the record to support that plaintiff's hiding of Angela caused a substantial change in Angela's academic performance, emotional stability, or in plaintiff's ability to care for Angela. The trial court made no findings, based on the psychological report, as to plaintiff's actions causing a change in Angela's welfare.

The trial court's finding that defendant had "provided more assistance, and shown greater ability, to help the minor child in her school work" does not show a substantial change of circumstance. As noted above, the original joint custody order found that "Angela was having problems focusing and paying attention. Her mother hired a tutor, and her father tried to assist her with her math and spelling." Defendant testified that he regularly helped Angela with her school work between one to two hours per day. Angela's fourth grade teacher further testified that defendant worked very hard on Angela's academic work. This evidence in the record is not a substantial change of the parties' participation with Angela's academics from the prior joint custody order.

The trial court's finding that when Angela was with plaintiff she had numerous unexplained absences and tardiness from school was not a substantial change of circumstance from the prior joint custody order. The prior custody order found that during the last school year Angela was absent nineteen days and was tardy several times when she was with plaintiff. The prior custody order

also found that Angela was tardy twice while she was with defendant. Thus, the trial court's finding of absenteeism and tardiness is not a substantial change that has affected the welfare of Angela from the prior joint custody order.

Although defendant asserts in his brief that his move to Hawaii was a substantial change that required the trial court to modify the joint custody order, defendant did not file a motion to modify the joint custody order based on his relocation. The record shows that it was *plaintiff* who filed a motion in the cause on 29 June 1999 and requested primary physical custody of Angela based on the substantial change of defendant's move to Hawaii. Our Court has held that a change in a custodial parent's residence is not, in itself, a substantial change in circumstances affecting the welfare of a child which justifies modification of a custody decree. "Where a parent changes his residence, the effect on the welfare of the child must be shown in order for the court to modify a custody decree based on change of circumstance." *Gordon v. Gordon*, 46 N.C. App. 495, 500, 265 S.E.2d 425, 428 (1980).

When one parent in *Evans* decided to relocate out of state and thereby affected the child's relationship with the non-custodial parent, our Court followed the analysis employed in *Griffith v. Griffith*, 240 N.C. 271, 81 S.E.2d 918 (1954). In *Griffith*, the custodial mother remarried and planned to move with her daughter to live with her new husband in New Jersey. In light of the proposed move, the trial court ordered that primary custody be awarded to the father. Our Court reversed the trial court's order, concluding that the trial court had failed to properly evaluate the best interests of the child. Our Supreme Court in *Griffith* stated that

> the court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental and moral faculties. All other factors, including visitorial rights of the other applicant, will be deferred or subordinated to these considerations, and if the child's welfare and best interests will be better promoted by granting permission to remove the child from the State, the court should not hesitate to do so.

*Id.* at 275, 81 S.E.2d at 921. If the trial court is to modify a plaintiff's right to joint custody of a child, it must consider all factors that indicate which parent is "best-fitted to give the child the home-life, care,

and supervision that will be most conducive to its well-being," *id.* at 275, 81 S.E.2d at 921, but only after determining that a substantial change of circumstance has occurred affecting the well-being of the child.

> In evaluating the best interests of a child in a proposed reloca-
> tion, the trial court may appropriately consider several factors
> including:

> [T]he advantages of the relocation in terms of its capacity to
> improve the life of the child; the motives of the custodial parent
> in seeking the move; the likelihood that the custodial parent will
> comply with visitation orders when he or she is no longer subject
> to the jurisdiction of the courts of North Carolina; the integrity of
> the noncustodial parent in resisting the relocation; and the likeli-
> hood that a realistic visitation schedule can be arranged which
> will preserve and foster the parental relationship with the non-
> custodial parent.

*Evans*, 138 N.C. App. at 142, 530 S.E.2d at 580 (citing *Ramirez-Barker*, 107 N.C. App. at 80, 418 S.E.2d at 680).

In the case before us, the trial court found only that defendant had moved to Hawaii, had rented a home that would be suitable for rearing Angela, and that appropriate arrangements had been made for Angela to attend school. The trial court made no other findings about the effect of the proposed relocation on Angela's physical and emotional well-being. *See Brewer v. Brewer*, 139 N.C. App. 222, 233, 533 S.E.2d 541, 549 (2000). Defendant testified that his motive for moving to Hawaii was not for Angela's welfare or for his career, but for the lifestyle that Hawaii offered. Defendant also admitted that Angela's entire family was in the Catawba County area and that Angela "wants a close relationship with all of us in the family," but that Angela "will be very happy to grow up in paradise." The psychological assessment required by the trial court showed that Angela did not want to move to Hawaii and would react with anger upon the relocation. The findings of fact by the trial court do not support the conclusion that there has been a substantial change in circumstances affecting Angela's welfare requiring that the joint custody order be amended granting defendant primary custody and allowing him to move Angela to Hawaii. "It is the effect on the child[] upon which the trial court must focus in determining whether to modify custody." *Browning*, 136 N.C. App. at 425, 524 S.E.2d at 99. "[W]hen the court fails to find facts so that this Court can determine that the order is adequately sup-

ported by competent evidence and the welfare of the child subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact." *Crosby*, 272 N.C. at 238-39, 158 S.E.2d at 80 (citation omitted). The order is vacated and remanded for findings of fact as to whether there was a substantial change of circumstances that affected the well-being of Angela. If the trial court makes findings of fact showing a change of circumstances affecting the well-being of Angela, it must then determine issues of custody and visitation based upon what is in Angela's best interests.

Vacated and remanded.

Chief Judge EAGLES concurs in the result by separate opinion.

Judge TYSON dissents.

EAGLES, Chief Judge, concurring.

I concur in the result reached by the majority. As this Court stated in *Brewer v. Brewer*, 139 N.C. App. 222, 233, 533 S.E.2d 541, 549 (2000), the trial court must make specific findings regarding any effect the change of circumstances had on the welfare of the children. A review of the trial court's order reveals that the court here failed to make adequate factual findings as to whether the substantial change in circumstances affected the child's welfare. I write separately to emphasize that I believe that the trial court has made sufficient findings that defendant's relocation to Hawaii and plaintiff's absconding with the child for two months constitute a substantial change of circumstances.

In its order, the trial court relied on two events to conclude that there had been a substantial change of circumstances: (1) defendant's relocation to Hawaii; and (2) plaintiff's absconding with the parties' daughter. The majority correctly states that a mere change in residency is not enough to constitute a substantial change of circumstances. However, on these facts I believe that the defendant has shown more than a mere change in residency. The record reveals that the trial court's original order called for the child to alternate her residence between parents at the end of every week. The court later altered this arrangement to every two weeks. However, even the most well-to-do individuals could not sustain this arrangement given that the defendant's new residence is more than 4,000 miles

from Catawba County, North Carolina. The travel expenses alone for a transcontinental transfer every two weeks would be beyond the means of most people. This case presents a situation where the original order is not functional. Therefore, in the factual context of this case, defendant's move to Hawaii constitutes a substantial change of circumstances.

I also believe that plaintiff's absconding with the child for two months amounts to a substantial change of circumstances. In its order, the court made extensive findings as to the plaintiff's removal of the child and her refusal to return the child in violation of a court order. The court found that on the advice of her sister, the plaintiff took the child and hid her for approximately two months. According to the record, plaintiff's sister had informed her that the defendant was planning on physically harming her. Rather than going to the authorities, plaintiff took the child and secreted her from defendant and the court. The court found that these alleged threats had no basis and that the plaintiff was never in danger. Plaintiff acknowledged that she had used "poor judgment." The trial court's findings are supported by competent evidence and therefore are conclusive. *See Metz v. Metz*, 138 N.C. App. 538, 540, 530 S.E.2d 79, 81 (2000). I believe that the plaintiff's actions in disregarding a court order and hiding the child with no basis amount to a substantial change in circumstances.

I agree that the trial court should revisit this case to determine whether the substantial change of circumstances affected the welfare of the child. If so, the court then may reevaluate what disposition is in the child's best interests.

TYSON, Judge, dissenting.

I would affirm the trial court's order modifying the custody of Angela and awarding defendant primary care, custody, and control of the child. I agree with the concurring opinion to the extent that it upholds the trial court's determination that plaintiff's absconding with Angela and defendant's relocation to Hawaii constitute substantial changes in circumstance. I would hold, however, that the trial court made sufficient findings as to the effect of the changed circumstances on Angela's welfare. Accordingly, I respectfully dissent.

In its 28 March 2000 order, the trial court specifically found as fact that its 1 November 1999 order and the psychiatric assessment report submitted to the court were incorporated into its findings of

fact. Such incorporation of a prior order and evidence is well within the trial court's discretion. *See Starco, Inc. v. AMG Bonding and Ins. Services, Inc.*, 124 N.C. App. 332, 336, 477 S.E.2d 211, 214 (1996) ("there is no prohibition against incorporating documents by reference and utilizing the contents of such documents as the trial court's findings of fact."); *Cohen v. Cohen*, 100 N.C. App. 334, 396 S.E.2d 344 (1990), *disc. review denied*, 328 N.C. 270, 400 S.E.2d 451 (1991) (incorporating affidavit into trial court's findings in child support order).

Any findings contained in the 1 November 1999 order and the psychiatric assessment report must be considered as the findings of fact by the court on 28 March 2000. In its 1 November 1999 order, the trial court found as fact that the result of plaintiff's absconding with Angela was that she missed 38 days of school. The trial court further found that upon Angela's return to school after this extended absence, she was behind in her school work, requiring that the school teacher and defendant spend additional periods of time instructing Angela.

The trial court further found as fact that the psychiatric assessment of Angela was performed "for the purpose of assessing any impact on the child with regard to the child moving to Hawaii." The psychiatric assessment report found that the impact or effect on Angela of custody and residence being awarded to one parent would be wholly beneficial and would provide needed stability in the child's life. The trial court incorporated the report itself into its findings of fact in the 28 March 2000 order.

In sum, the trial court's findings on 28 March 2000 clearly state: (1) that plaintiff's absconding with the child caused Angela to miss 38 days of school, furthering her failure to maintain her school work and requiring that she obtain additional help from her teacher and defendant to make up school work caused by the absences; and (2) that the effect on Angela of a move to Hawaii and the awarding of primary custody and residence of Angela to one parent would provide needed stability in the child's life.

In *Browning v. Helff*, 136 N.C. App. 420, 524 S.E.2d 95 (2000) this Court recently held that the trial court failed to make the necessary finding of fact regarding the effect of the defendant-father's cohabitation on the welfare of the children. *Id.* at 424, 524 S.E.2d at 98. The trial court simply found that the children were present in the defendant's residence while "defendant was residing with a person of the

CARLTON v. CARLTON

[145 N.C. App. 252 (2001)]

opposite gender to whom he is not related." *Id.* We stated that the "fact that the children were present, however, cannot be construed as a finding that the children's welfare was affected." *Id.* We further held that the trial court's finding that the defendant's conduct " 'is in violation of North Carolina Law' " failed to establish that the children's welfare was affected by the change of circumstances. *Id.* at 425, 524 S.E.2d at 99.

The present case is easily distinguished from *Browning* and *Brewer.* The trial court did more than just find that plaintiff had absconded with Angela, and that plaintiff's action was a violation of the court's order. The trial court's findings make clear that the effect of plaintiff's action on Angela was to cause the child to miss 38 consecutive days of school and to fall further behind in her school work, requiring that she obtain additional tutoring. The trial court also did more than find that defendant had accepted employment in Hawaii, maintains a home in Hawaii suitable for the child, and had made appropriate arrangements for Angela to attend school in Hawaii. The trial court found that the court-ordered psychiatric assessment of Angela was performed "for the purpose of assessing any impact on the child with regard to the child moving to Hawaii," and that the resulting report determined that the move's impact or effect on Angela would provide much needed stability in her life.

The trial court's findings leave no need to draw inferences. The trial court carefully incorporated the findings of fact from its 1 November 1999 order as well as the findings of the court-ordered psychiatric assessment report of 30 November 1999, prepared specifically to assess the impact or effect of a move to Hawaii on Angela. These findings, along with the additional findings from the 28 March 2000 order, taken as a whole, clearly support the trial court's conclusions of law and order.

I decline to read the order appealed from so narrowly as to disregard the incorporated findings, or to constrain the trial court to use certain and specific "buzz" words or phrases beyond that included in the order. I would affirm the order of the learned trial court. I therefore respectfully dissent.