STROUD, Judge.
 

 *210
 
 For the want of a nail the shoe was lost.For the want of a shoe the horse was lost.For the want of a horse the rider was lost.For the want of a rider the battle was lost.For the want of a battle the kingdom was lost,And all for the want of a horseshoe-nail.
 

 Benjamin Franklin, Poor Richard's Almanack (1758). No kingdoms were lost in this appeal, but this opinion is much longer than it should have been for the want of a few words in the district court's order and in defendant-father's motions.
 

 Courts strive mightily to rule based upon the substance of pleadings and orders, but there is a reason certain specific words are important in these legal documents as the correct words make orders clear and can avoid unnecessary appeals. The presence of "magic words" lets the appellate court know that the trial court has used the correct legal standard. While the absence of "magic words" may not result in reversal of an order,
 
 *864
 
 it often creates issues on appeal that could be easily avoided.
 

 Plaintiff-mother appeals a trial court order modifying child custody, finding her in contempt, and ordering her to pay defendant-father's attorney fees. The trial court's order regarding civil contempt did not include any "purge" conditions, so we must reverse the portion of the order holding Mother in civil contempt. The trial court's order regarding modification of custody lacked a conclusion of law with the simple phrase "substantial change of circumstances," but after detailed analysis of the trial court's vague conclusion of Father's "entitlement" to modification in conjunction with the findings of fact, we affirm. Finally, the absence of the words "insufficient means to defray the expense of the suit" in defendant-father's motion for modification of custody created plaintiff-mother's entire argument on the award of attorney fees, but again, after a detailed analysis, we affirm because plaintiff-mother raised her objection to attorney fees too late. In summary, we affirm the order as to custody and attorney fees for the custody modification and reverse the order as to civil contempt.
 

 *211
 
 I. Background
 

 Plaintiff ("Mother") and defendant ("Father") were married in 2000, had one child in 2003, one child in 2007, and separated in 2012. In 2012, Mother filed a complaint against Father seeking child custody, child support, post-separation support, alimony, attorney fees, equitable distribution, interim distribution, and an injunction to prevent Father from diverting funds. In February 2013, Father answered Mother's complaint alleging marital misconduct and counterclaiming for child custody, child support, and equitable distribution. From these original pleadings, only child custody is at issue on appeal.
 

 On 6 January 2014, the parties entered into a Consent Order regarding permanent child custody and child support with the parents sharing joint physical custody-Mother having the children Saturday through Wednesday and Father Wednesday through Saturday. On 16 April 2015, Father filed to modify custody alleging in part that Mother had married Mr. Dayton Kolczak in January of 2014.
 
 [1]
 
 The motion made detailed allegations about Mr. Kolczak's criminal activities. For example, the motion alleges both Mother and Mr. Kolczak were arrested at Mother's home when the children were present in January 2014 and the police had to call Father to pick up the children. Father sought sole legal and physical custody and also attorney fees.
 

 In June of 2015, Father filed a motion for emergency custody and for a temporary parenting agreement ("TPA") again based on the criminal conduct of Mr. Kolczak and the negative effects it was having on the children. On 24 July 2015, the trial court entered an order granting Father's request for emergency custody and a separate order for a TPA which modified the custodial schedule; the orders did not suspend Mother's visitation but imposed additional requirements:
 

 2. Mother's visitation with the children shall not be suspended but shall be conditioned upon the following:
 

 a. Dayton Kolczak shall not be at Mother's residence at any time when the minor children are present. The minor children shall have absolutely no contact with Dayton Kolczak at any time during their visitation
 
 *212
 
 with Mother. "No contact" shall include but is not limited to, no contact at Mother's residence, in a car driven by Mother or anyone else, in a public place or anywhere else Dayton Kolczak might be present. Additionally, "no contact" shall be no communication via telephone, email, text or any other means of communicating with the boys.
 

 ....
 

 d. Mother shall notify Father if she and/or Dayton Kolczak are arrested within 24 hours of said arrest.
 

 e. There shall be no illegal drugs or drug paraphernalia at Mother's home.
 

 *865
 
 The orders also included provisions for no contact between the children and associates of Mr. Kolczak and required Mother to submit to a drug test and provide the results to Father's attorney.
 

 In September 2015, Mother moved for a temporary restraining order ("TRO") and injunction against Father, alleging that he was contacting her "regularly and relentlessly" "for the purposes of harassment and interference." On 6 November 2015, Father filed a motion for contempt alleging Mother's failure to comply with both the Consent Order and the TPA order and requesting attorney fees. In October of 2015, the district court dismissed Mother's motion for a TRO and injunction with prejudice. In November of 2016, Father filed a second motion for contempt alleging Mother's additional failures to comply with both the Consent Order and the TPA order and again requesting attorney fees.
 

 Over the course of five days in March and August of 2016, the trial court held a hearing on Father's motion to modify custody, which included a request for attorney fees, and both of his motions for contempt. In October of 2016, the district court entered an order determining Mother was in civil contempt, awarding Father primary custody with Mother having secondary custody, and awarding Father attorney fees. Mother appeals only the October 2016 order.
 

 II. Civil Contempt
 

 Mother first challenges the district court's determination that she was in contempt.
 

 The standard of review for contempt proceedings is limited to determining whether there is competent
 
 *213
 
 evidence to support the findings of fact and whether the findings support the conclusions of law. Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.
 

 Watson v. Watson
 
 ,
 
 187 N.C. App. 55
 
 , 64,
 
 652 S.E.2d 310
 
 , 317 (2007) (citations and quotation marks omitted).
 

 A. Findings of Fact
 

 Mother contests eleven of the trial court's findings of fact and argues "[t]here are four major categories in which the trial court found Michelle in civil contempt and they are as follows: (1) notification of arrests, (2) first right of refusal, (3) registration in camps without consulting father, and (4) allowing Dayton at Michelle's residence when the minor children are present." Mother has also challenged the contempt portion of the order based upon the lack of any purge conditions, and as discussed below, we are reversing the portion of the order finding her in contempt for that reason, but because the challenged findings of fact support the portions of the order addressing modification as well as contempt, we must address them.
 

 1. Notification of Arrests
 

 The TPA order required Mother to notify Father himself within 24 hours if she or her husband was arrested. Mother did not identify the findings of fact regarding notification of arrests as unsupported by the evidence. The relevant findings are:
 

 25. Mother did not tell Father that her Husband, Dayton Kolczak, had been arrested within twenty-four (24) hours as required by the TPA Order.
 

 26. Mother's attorney did notify Father's attorney but the requirement was for Mother to notify Father within twenty-four (24) hours and that did not happen.
 

 Mother argues that though she "herself did not notify Father[,]" Father was in fact notified. Mother contends she took "reasonable measures to comply with" the order by her attorney notifying Father's attorney. Thus Mother is not contending she directly notified Father or that she was unable to directly notify Father, but rather that having her attorney contact Father's attorney was close enough and fulfilled the spirit of the order.
 

 *214
 
 The trial court was well within its discretion in finding that Mother willfully violated the Consent Order and TPA order by having Father's attorney notified instead of directly notifying Father. The Consent Order specifically provided that "[t]he parties shall use email or text as their primary method of
 
 *866
 
 communication and all communication should be respectful." The TPA order further required direct notification, which has the advantage of generally being faster. If there was an arrest on a weekend or holiday, contacting an attorney who must then contact another attorney who then must contact a client may substantially delay getting the message to Father. In addition, Mother's choice likely caused Father to incur additional attorney fees for a notification which could have been provided directly for free.
 

 2. Right of First Refusal
 

 The Consent Order contains a provision that "[t]he parties agree to offer the other parent the first right of refusal to watch the children if they are going to be more than 3 hours away before leaving them with a third party." Mother argues that the evidence does not support these findings regarding right of first refusal:
 

 11. In December 2014, Mother violated the right of first refusal when Mother did not let Father care for the children. The children stayed with someone else instead of the Father. No email was sent to the Father to see if he could care for the children.
 

 12. Mother violated the right of first refusal when Mother left the children with Nicki St. Claire and did not let Father care for the children.
 

 The parties presented extensive and contradictory evidence regarding Mother's allowing the children to stay with third parties without notifying Father in advance. Mother acknowledges that she had allowed the children to go on sleepovers and day trips without notifying Father, but contends that "allowing a child to have a sleepover and a daytrip is not competent evidence to find that [Mother] willfully failed to comply with the first right of refusal requirement." But Father argues on appeal that Mother did not testify she was at home during the sleepover with Ms. St. Claire; in other words, Mother was using the sleepover as a method of childcare. The trial court considered and weighed the evidence; we cannot re-weigh it. Mother does not deny that the children had a sleepover and her intent in allowing that could be interpreted in different ways. Because there was sufficient evidence for the trial court's findings regarding the right of first refusal, they "are conclusive on appeal[.]"
 
 Id.
 
 at 64,
 
 652 S.E.2d at 317
 
 .
 

 *215
 
 3. Registration in Camp without Consulting Father
 

 The Consent Order contains a provision that the parties "cannot make plans or schedule activities for the children during the other parent's designated time without the prior consent of the other parent." Regarding Mother registering the children at camp without consulting Father, Mother argues these findings of fact are not supported by the evidence:
 

 13. Mother registered the children for camp without consulting with Father first.
 

 ....
 

 15. No option was given to Father to make-up the days that he missed.
 
 [2]
 

 Mother does not contest finding of fact 14 which found that her decision to enroll the children in camp "resulted in Father not seeing the children for 18-21 days."
 

 Mother's entire argument on the challenged findings regarding camp is that "Father testified that '[w]e talked about camps' in April 2015. T. Vol. 2, pp. 168. The trial court erred in holding [Mother] in civil contempt when [Father's] testimony was that they did talk about camps in April 2015." Father correctly points out there was much testimony regarding the children's camps and the parties' communications about them. Father did say the phrase quoted by Mother-"[w]e talked about camps"-but talking about camps in general is very different than notification of specific camps and the time periods for them. The trial court again weighed the evidence, determined credibility, and made findings based upon the evidence.
 

 *867
 
 4. Mr. Kolczak's Presence at Mother's Residence
 

 The TPA order specifically ordered that Mr. "Kolczak shall not be at Mother's residence at any time when the minor children are present." Mother challenges these findings about Mr. Kolczak's presence in violation of the TPA order:
 

 16. On or about August 21, 2015, Dayton Kolczak was in the driveway of Mother's home while the children were present despite the Order stating he was not to be at the home.
 

 *216
 
 ....
 

 46. Despite Mother's agreement with Father that Mr. Kolczak would not have contact with the children, the children have been exposed to Mr. Kolczak and Mr. Kolczak has had contact with the children.
 

 Mother argues that the evidence shows Father
 

 drove the children to [Mother's] home as [Mr. Kolczak] was leaving the home and was in the driveway. T. Vol. 2, pp. 96. [Mother] had no control over when [Father] was bringing the children to her home. The children were never present at the residence when [Mr. Kolczak] was present, in fact according to [Father] they were in his vehicle the entire time that as [Mr. Kolczak] was leaving. T. Vol. 2, pp. 96.
 

 But Mother herself testified:
 

 Q: And can you please describe for the Court your recollection of that day when [Mr. Kolczak] was there?
 

 A: Yes.
 

 He was heading out for work,
 
 [Father] had texted me that he was on the way with the boys
 
 and [Mr. Kolczak] left the house, but forgot his eyeglasses and ran in to get 'em.
 

 He was walking out the door when [Father] pulled up. So he stayed around the back and then came out the front.
 

 (Emphasis added.)
 

 Once again, Mother asks us to make a different interpretation of the evidence than the trial court. Based on Mother's own testimony, Mother knew that Father would arrive at any moment but did not ensure that her husband was away from the home before Father and the children arrived. The trial court could have found this incident to be an innocent lapse or it could find otherwise, as it did. Furthermore, the trial court was viewing this isolated incident in the context of criminal activity by both Mother and her husband as there were other findings regarding Mr. Kolczak not challenged on appeal:
 

 40. Mr. Kolczak has a criminal history and past as well as run-ins with the police for the past year.
 

 *217
 
 41. Mr. Kolczak is associated with Jalen O'Shea Cureton (herein after "Mr. Cureton").
 

 42. Mr. Cureton has been arrested and charged with a financial crime as a result of Father's financial information being stolen and/or utilized.
 

 43. Currently, Mr. Kolczak is incarcerated upon information and belief in the State of Illinois for various felony offenses but the Court finds he has been arrested on various dates which the Court will not enumerate. In January 2014, Mr. Kolczak as well as Mother were arrested and charged with an offense. Father bailed Mother out of jail after Mother was arrested.
 

 44. Father and Mother reached an agreement that the children would have no contact with Mr. Kolczak.
 

 45. Mother's criminal charges were dismissed after she completed court-ordered directives.
 

 ....
 

 47. Mr. Kolczak's companions, including his brother, Dustin Ko1czak, and his friend, Matthew Roe, have had contact with the children.
 

 48. Dustin Kolczak as well as Matthew Roe also have criminal records.
 

 There was competent evidence upon which the trial court could find Mother allowed Mr. Kolczak to be present at the home when the children arrived.
 

 B. Willfulness
 

 The remaining challenged findings of fact are regarding willfulness and Mother's
 
 *868
 
 ability to comply with the Contempt Order and TPA order. Mother argues that any violations of the Content Order and TPA order were misunderstandings or simply out of her control.
 

 Civil contempt is designed to coerce compliance with a court order, and a party's ability to satisfy that order is essential. Because civil contempt is based on a willful violation of a lawful court order, a person does not act willfully if compliance is out of his or her power. Willfulness constitutes: (1) an ability to comply with the court
 
 *218
 
 order; and (2) a deliberate and intentional failure to do so. Ability to comply has been interpreted as not only the present means to comply, but also the ability to take reasonable measures to comply.
 

 Id.
 
 at 66,
 
 652 S.E.2d at 318
 
 (2007) (citations and quotation marks omitted).
 

 We have determined the findings of fact upon which the trial court found Mother in willful contempt are supported by the evidence. Once again, Mother is asking this Court to adopt a different view of her credibility and actions than the district court, but the district court was within its discretion in determining Mother's actions to be in willful violation of the orders in that Mother had the ability to comply and intentionally chose not to do so.
 
 See generally
 
 id.
 

 This argument is overruled.
 

 C. Purge Conditions
 

 Mother argues that the "Civil Contempt Order should be vacated since the court failed to specify how [she] might purge herself of contempt." Although the order specifically concluded that Mother "is in civil contempt of Court" for the violations of the two orders, Mother is correct that the order has no purge conditions or punishment for the contempt
 
 [3]
 
 . Father agrees with Mother that the order is deficient since it has no purge conditions, but he disagrees on the relief. Father argues we should remand to the trial court for entry of purge conditions and cites
 
 Lueallen v. Lueallen
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 690
 
 , 708 (2016). But in
 
 Lueallen
 
 , the contempt was failure to pay child support, and the order had required the obligor to pay "an additional $75.00 per month" to be applied to arrears, where the order had also required her to pay $100.00 per month toward arrears, and the order set no ending date for the arrears payments.
 

 Id.
 

 at ---- n.9,
 
 790 S.E.2d at
 
 707 n.9. We determined "that the purge conditions in the order are impermissibly vague" and remanded for clarification.
 

 Id.
 

 at ----,
 
 790 S.E.2d at 708-09
 
 . In
 
 Lueallen
 
 , the trial court had determined that the obligor owed past-due child support and the question was simply the correct amount and how that amount would be paid.
 
 See generally
 

 id.
 

 , --- N.C. App. ----,
 
 790 S.E.2d at 690
 
 .
 

 *219
 
 But in this case, the contempt is primarily based upon communication and visitation provisions of the orders, not child support. It is not apparent from the order how an appropriate civil contempt purge condition could "coerce the defendant to comply with a court order" as opposed to punishing her for a past violation.
 
 Wellons
 

 v. White
 
 ,
 
 229 N.C. App. 164
 
 , 181,
 
 748 S.E.2d 709
 
 , 722 (2013). And here the trial court did not order vague purge conditions; it ordered none at all.
 

 We believe this case is more similar to
 
 Wellons
 
 than
 
 Lueallen
 
 .
 
 Compare
 

 Lueallen
 
 , --- N.C. App. ----,
 
 790 S.E.2d 690
 
 ;
 
 Wellons
 
 ,
 
 229 N.C. App. 164
 
 ,
 
 748 S.E.2d 709
 
 . In
 
 Wellons
 
 , the Court addressed a father's denial of the grandparent's visitation privileges established by a prior order.
 
 See
 

 Wellons
 
 ,
 
 229 N.C. App. at 165
 
 ,
 
 748 S.E.2d at 711
 
 . In
 
 Wellons
 
 , the trial court held the father in civil contempt for denial of visitation and ordered that he comply with the terms of the prior orders as a purge condition, but this Court reversed the contempt order:
 

 In the instant case, the district court erred by failing to provide Mr. White a method to purge his contempt.
 

 On 5 July 2012, the district court declared Mr. White to be in direct and wilful [sic] civil contempt of the prior Orders of
 
 *869
 
 the Court. It suspended Mr. White's arrest based on the following condition: Defendant can purge his contempt by fully complying with the terms of the 30 March 2012 Interim Order, the prior Orders of 28 December 2007 and 27 July 2010, and this Order. The order did not establish a date after which Mr. White's contempt was purged or provide any other means for Mr. White to purge the contempt.
 

 We have previously reversed similar contempt orders. For instance, in
 
 Cox
 
 a contempt order stated the defendant could purge her contempt by not:
 

 placing either of the minor children in a stressful situation or a situation detrimental to their welfare. Specifically, the defendant is ordered not to punish either of the minor children in any manner that is stressful, abusive, or detrimental to that child.
 

 There, we reversed because the trial court failed to clearly specify what the defendant can and cannot do to the minor children in order to purge herself of the civil contempt.
 

 *220
 
 Similarly, in
 
 Scott
 
 a contempt order stated: Defendant may postpone his imprisonment indefinitely by (1) enrolling in a Controlled Anger Program approved by this Court on or before August 1, 2001 and thereafter successfully completing the Program; (2) by not interfering with the Plaintiff's custody of the minor children and (3) by not threatening, abusing, harassing or interfering with the Plaintiff or the Plaintiff's custody of the minor children.
 

 There, although we indicated the requirement to attend a Controlled Anger Program may comport with the ability of civil [violators] to purge themselves, we reversed because the other two requirements were impermissibly vague.
 

 In the case at hand, the district court did not clearly specify what Mr. White can and cannot do to purge himself of contempt. Although the district court referenced previous orders containing specific provisions, it did not: (i) establish when Mr. White's compliance purged his contempt; or (ii) provide any other method for Mr. White to purge his contempt. We will not allow the district court to hold Mr. White indefinitely in contempt. Consequently, we reverse the portion of the 5 July 2012 order holding Mr. White in civil contempt.
 

 Id.
 
 at 182-83,
 
 748 S.E.2d 709
 
 , 722-23 (2013) (citations, quotation marks, ellipses, and brackets omitted). We therefore reverse the conclusion of law and decree provision holding Mother in civil contempt, specifically conclusion of law 4 and paragraph 1 of the decree.
 

 III. Modification of Custody
 

 Mother raises two issues regarding the modification of custody.
 

 A. Hearsay Evidence
 

 Mother contends the trial court erred in modifying custody because some of the critical findings of fact supporting modification were erroneously based upon hearsay. Mother argues that during the hearing, Father's counsel introduced evidence from online searches and a newspaper article regarding Mr. Kolczak's criminal record and activities. Mother contends she objected to the evidence, but the trial court overruled the objection and thus "erred relying on hearsay as a basis to change custody." (Original in all caps.).
 

 *221
 
 The competency, admissibility, and sufficiency of the evidence is a matter for the trial court to determine. We review the trial court's exclusion of documentary evidence under the hearsay rule for abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision.
 

 In re Lucks
 
 ,
 
 369 N.C. 222
 
 , 228,
 
 794 S.E.2d 501
 
 , 506 (2016) (citations and quotation marks omitted).
 

 Mother's husband, his criminal activities, and the risk to the children from exposure to him and his associates were primary concerns in this hearing, since the motion for modification was based in part upon Mother's failure to comply with the prior orders which
 
 *870
 
 required her not to have the children in Mr. Kolczak's presence. Father was not the only one to testify about Mr. Kolczak's crimes. For example, the first witness was Detective Kevin Jones, in the Financial Crimes Unit of the Charlotte/Mecklenburg Police Department. Detective Jones testified about his investigation of Father's report of "credit card accounts being opened or account takeovers as we call them, where his existing accounts had been compromised." This investigation revealed a connection between a man identified as Mr. Kolczak and Mr. Jaylin Curatan, the individual making purchases at a Best Buy store with Father's Best Buy account. Detective Jones discovered the relationship between Mr. Kolczak and Mr. Curatan because "Mr. Kolczak was actually arrested on September 1st, 2015, and Mr. Curatan was with him at the time."
 

 In the TPA order, the district court found that Mr. Kolczak had been "arrested on May 15, 2015 for (1) felony possession of Schedule I Controlled Substance; (2) felony possession of cocaine; (3) resisting public officer; and (4) possession/manufacturing false identification." The district court further found in the TPA order that "[i]n addition to these arrests, Mr. Kolczak was arrested in Cabarrus County in August 2014, in Wake County in January 2015 and Dalton, Georgia in April 2015." Thus, even assuming arguendo the specific evidence Mother challenges regarding her husband's criminal activity was hearsay, it was not prejudicial considering the extensive other similar evidence before the trial court.
 
 See
 

 Williams v. Williams
 
 ,
 
 91 N.C. App. 469
 
 , 473,
 
 372 S.E.2d 310
 
 , 312 (1988) ("While we agree that the testimony has characteristics of hearsay under the North Carolina Rules of Evidence, we hold that its admission was not prejudicial. The admission of incompetent testimony will not be held prejudicial when its import is abundantly established
 
 *222
 
 by other competent testimony, or the testimony is merely cumulative or corroborative. Because both plaintiff and defendant presented a considerable amount of conflicting evidence regarding the alleged sexual abuse, we conclude that the admission of this testimony was not prejudicial." (citations and quotation marks omitted)). This argument is overruled.
 

 B. Modification of Custody
 

 Mother next contends the "trial court erred in modifying custody without finding a change in circumstances." (Original in all caps.) In her brief Mother contends that if we "exclude" the findings of fact regarding her husband's criminal history, there are no findings of fact regarding a change of circumstances as required for a modification of custody because "remarriage alone is not a change of circumstances." Mother argues "the trial court failed to articulate any substantial change in circumstances since entry of the original orders" and how any changes affect the welfare of the children.
 

 Father's brief seems to recognize that the order included no explicit conclusion of a substantial change in circumstances
 
 *871
 
 affecting the best interests of the children. Father argues "[f]indings of fact numbers 86 through 89 are, despite their label, actually conclusions of law in that the trial court exercised its judgment and/or applied legal principles to the specific facts of the immediate case." These findings provide:
 

 86. Mother is not able to sever[ ] ties with Mr. Kolczak.
 

 87. It is necessary to ensure the children's safety to award Father primary custody.
 

 88. Father is entitled to a modification of the January 6, 2014 Consent Order.
 

 89. Father is a fit and proper person to have the care, custody and control of the minor children and it is in the best interests of the minor children for Father to have their care, custody and control.
 

 Findings 86 and 87 are findings of fact, not conclusions of law, but Findings 88 and 89 are conclusions of law. "The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review."
 
 Westmoreland v. High Point Healthcare Inc.
 
 ,
 
 218 N.C. App. 76
 
 , 79,
 
 721 S.E.2d 712
 
 , 716 (2012).
 

 *223
 
 A trial court's determination that there has been a substantial change of circumstances affecting the best interest of the children is a conclusion of law:
 

 With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.
 

 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 475,
 
 586 S.E.2d 250
 
 , 254 (2003). Furthermore, "[w]e review conclusions of law
 
 de novo
 
 ."
 
 In re B.S.O.
 
 ,
 
 234 N.C. App. 706
 
 , 708,
 
 760 S.E.2d 59
 
 , 62 (2014).
 

 We have already determined that the findings of fact Mother challenged above, including those regarding Mr. Kolczak's criminal history, are supported by competent evidence, so we must now consider if those findings support the trial court's conclusion of law that "Father is entitled to a modification of the" prior order.
 
 See generally
 

 Shipman
 
 ,
 
 357 N.C. at 475
 
 ,
 
 586 S.E.2d at 254
 
 . Mother is correct that the order includes no specific conclusion of law-whether phrased as a finding of fact or as a conclusion of law-that there had been a substantial change of circumstances affecting the welfare of the children which justifies modification of custody. But finding 88 is a conclusion that "Father is entitled to a modification" of custody, and Father could only be "entitled" if the trial court concluded there has been a substantial change of circumstances affecting the welfare of the children.
 
 See generally
 

 id.
 

 Mother does not argue finding 88 could logically have any other meaning.
 

 In the extensive findings of fact, the trial court detailed the substantial changes since entry of the Consent Order, including the effect these changes had on the children's welfare. Along with many of the findings we have already discussed regarding the contempt portion of the order, the order then addressed Mother's marriage to Mr. Kolczak within the same month as the Consent Order. The findings went on to note Mr. Kolczak's criminal history and "run-ins with the police for the past year."
 

 *224
 
 The order notes that some of his criminal associates, Mr. Cureton, Mr. Roe, and his brother Dustin, also had criminal records, and the children were exposed to them as well. The district court found specifically that at the time of the hearing "Mr. Kolczak is incarcerated upon information and belief in the State of Illinois for various felony offenses[.]" The district court then noted Mr. Kolczak had "various" other arrests, including one in January where both he and Mother were arrested, and Father bailed Mother out of jail. The district court then noted that Mother and Father had agreed that the children would have no contact with Mr. Kolczak, but Mr. Kolczak had contact with the children despite that agreement.
 

 The district court also made findings about both parents' participation in the children's educational, spiritual, and medical needs, noting that both parents had been involved. The district court also found that outside of the contempt issues, the parents worked "well together[,]" although sometimes Father's text messages were "condescending and critical[,]" and Mother failed to keep Father as well-informed as she should. The district court found that Mother and Mr. Kolczak had signed a Separation Agreement in December 2015, but Mother still remained in contact with him while incarcerated; mother had taken the children to see Mr. Kolczak's grandmother; and though Mother had adequate warning and opportunity to ensure her children were not around Mr. Kolczak, she had not done so.
 

 It is apparent from the findings of fact that the trial court determined that Mother's marriage to a convicted felon, the arrest of Mother and Mr. Kolczak in the home when the children were present, exposure to Mr. Kolczak and his criminal associates, Mother's refusal to ensure that Mr. Kolczak had no contact with the children, and Mother's continuing
 
 *872
 
 relationship with him, despite claiming to be separated, were substantial changes since entry of the Consent Order. The criminal activity endangered the children. At the time of entry of the Consent Order, Mother had not informed Father she planned to marry Mr. Kolczak, had not been arrested, and had never violated an order regarding custody or visitation.
 

 Mothers seeks to compare this case to
 
 Davis v. Davis
 
 , but in that case, "the trial court did not conclude that there was a substantial change in circumstances, let alone that those changes affected the welfare of the children. Actually, the trial court found just the opposite as to defendant's motion and was silent as to plaintiff's motion."
 
 229 N.C. App. 494
 
 , 504,
 
 748 S.E.2d 594
 
 , 601-02 (2013). Nor did the
 
 Davis
 
 findings of fact make the reason for the modification "self-evident" but rather
 
 *225
 
 noted the issue for concern arose from an "isolated incident."
 
 Id.
 
 at 504, 748 S.E.2d at 602.
 

 This case is more similar to those where the order was affirmed because it found facts which show the substantial change of circumstances and how that change has affected the children, even though the order did not use exactly the right phrases.
 
 See, e.g.
 
 ,
 
 Carlton v. Carlton
 
 ,
 
 145 N.C. App. 252
 
 ,
 
 549 S.E.2d 916
 
 ,
 
 rev'd per curiam
 
 ,
 
 354 N.C. 561
 
 ,
 
 557 S.E.2d 529
 
 (2001). In
 
 Carlton
 
 , our Supreme Court reversed based upon the dissent.
 
 See
 

 Carlton
 
 ,
 
 354 N.C. 561
 
 ,
 
 557 S.E.2d 529
 
 . In
 
 Carlton
 
 , the trial court had awarded the father primary custody after it modified a joint custody order with of alternating weeks with each parent after the mother had absconded with the child for about two months, and the father had moved to Hawaii.
 
 See
 

 Carlton
 
 ,
 
 145 N.C. App. at 252-54
 
 ,
 
 549 S.E.2d at 917-18
 
 . The trial court did not specifically conclude there had been a substantial change in circumstances affecting welfare of the minor child, and the majority of this Court vacated and remanded the case to the trial court based upon the lack of the specific conclusion of law of a substantial "change of circumstances affecting the well-being" of the child.
 
 Id.
 
 at 259-60,
 
 549 S.E.2d at 921-22
 
 .
 
 [4]
 
 The dissenting judge, with whom the Supreme Court agreed,
 
 see
 

 Carlton
 
 ,
 
 354 N.C. 561
 
 ,
 
 557 S.E.2d 529
 
 , would have affirmed the order, since the extensive and detailed findings clarified the reasons for the change and the effect upon the child, stating that "I decline to read the order appealed from so narrowly as to disregard the incorporated findings, or to constrain the trial court to use certain and specific 'buzz' words or phrases beyond that included in the order."
 
 Id.
 
 at 261-63,
 
 549 S.E.2d at 924
 
 (Tyson, J., dissenting). The Supreme Court did not find it necessary to remand to the trial court for additional findings or conclusions of law but agreed with the dissent that the basis for the modification of custody was clear from the detailed findings of fact.
 
 See
 

 Carlton
 
 ,
 
 354 N.C. 561
 
 ,
 
 557 S.E.2d 529
 
 .
 

 *226
 
 While Mother is correct in her argument that "remarriage alone" is not necessarily a change of circumstances supporting a modification of custody, remarriage can be an important factor supporting a justification for modification. Here, the district court did not modify custody based on "remarriage alone" but on the fact that the remarriage was to a convicted felon who brought criminal activity and criminal associates into Mother's home and into the presence of the children. Mother's marriage to Mr. Kolczak caused substantial negative changes to the lives of the children, including Mother's arrest and exposure to criminals which resulted in a court order for no contact with Mr. Kolczak that Mother violated. Therefore, we conclude the trial
 
 *873
 
 court did not err in concluding that Father was entitled to modification of the custody order. This argument is overruled.
 

 IV. Attorney Fees for Modification of Custody
 

 Mother's last argument is that "the court erred in awarding attorney fees." We first note that the order on appeal set forth two separate sections of findings of fact for attorney fees, one for the contempt motions and one for the modification of custody. Mother does not challenge any of the findings of fact related to the fees for the contempt motions. Mother limits her argument regarding the award of attorney fees to the fees for modification of custody motion only. For example, Mother challenges only one finding of fact, No. 91, in the section for fees for modification of custody which states, "Father is acting in good faith in bringing this Motion. Father does have some means to defray the cost of his legal expenses but it does not appear that he has the ability to defray all of the costs considering the care and provisions made for the children." Mother also challenges only one paragraph of the decree, No. 21, which addresses specifically attorney fees for the motion for modification of custody. Therefore, we conclude Mother has not challenged the attorney fees in relation to the contempt motion so we will not address that award of fees.
 

 Mother's only substantive argument regarding the award of attorney fees is that the district court erred in awarding attorney fees because Father's motion for modification of custody "failed to allege that he has insufficient means to defray his expense of the suit." Father's motion requested that "Mother be ordered to pay Father's costs and fees, including reasonable attorney's fees" in its prayer for relief. Mother first objected to an award of attorney fees based upon the lack of detail in the motion to modify custody during the portion of the hearing held on 2 August 2016. Mother did not cite to the trial court any case requiring specificity in a motion for attorney fees nor does she cite such a case
 
 *227
 
 on appeal. Father argued to the trial court that Mother had waived her objection to the sufficiency of the request for attorney fees since she had not raised it earlier:
 

 There was in-depth testimony in March about this issue. We put on all the evidence about his inability to pay. That he was acting in good faith.
 

 Ms. Moen did not object then. All we're doing is filing a Supplemental Affidavit.... and the evidence has been presented.
 

 The district court overruled Mother's objection because she failed to object to the attorney fees based upon lack of specificity in the motion earlier in the hearing.
 

 In
 
 Byrd v. Byrd
 
 , the plaintiff argued that the trial court erred by awarding attorney fees to the defendant in a child support case because the "defendant's Answer and Counterclaim does not make the required allegations or pray for the appropriate relief[.]"
 
 62 N.C. App. 438
 
 , 442-43,
 
 303 S.E.2d 205
 
 , 209 (1983). But the defendant had offered evidence on attorney fees at the hearing, and thus this Court determined,
 

 [W]hen issues not raised in the pleadings are tried by the express or implied consent of the parties, North Carolina allows for the pleadings to be amended to conform to the evidence. Where a party offers evidence at trial which introduces a new issue and there is no objection by the opposing party, the opposing party is viewed as having consented to the admission of the evidence and the pleadings are deemed amended to include the new issue.
 

 Here, the required allegations and pleadings were not made in defendant's answer and counterclaim. However, it was found from the evidence at the hearing that the defendant was acting in good faith, that she had insufficient means to defray the expense of the suit and that plaintiff had refused a request to furnish adequate support at the time the action was instituted. These findings are supported by evidence in the record which was introduced at the hearing without objection by plaintiff. Since plaintiff did not object to the admission of this evidence, the pleadings are deemed to be amended to conform to the evidence and the trial
 
 *874
 
 court's award of attorney's fees was therefore proper.
 

 Id.
 

 (citations omitted).
 

 *228
 
 This case differs from
 
 Byrd
 
 because Father did ask for attorney fees,
 
 contrast
 

 id.
 

 , although without specificity in the pleading. Here, also different, Mother did object, but her objection came late in the hearing. Father testified regarding his request for attorney fees and submitted his first attorney fee affidavit on 29 March 2016. Mother did not raise her objection until 2 August 2016, the third day of the hearing, when Husband was submitting a supplemental attorney fee affidavit. We express no opinion on whether Husband's motion for attorney fees was required to be more detailed since we need not reach that issue, but Mother waived any objection to the sufficiency of Father's motion requesting attorney fees by failing to object earlier.
 
 See generally
 
 id.
 

 V. Conclusion
 

 We affirm the order for modification of custody and the award of attorney fees for modification of custody. We also affirm the award of attorney fees for contempt because Mother did not challenge this portion of the award of attorney fees on appeal. We affirm the findings of fact regarding Mother's willful violations of the prior orders, but because the trial court did not set any purge conditions, we reverse the trial court's determination of civil contempt, specifically conclusion of law 4 and paragraph 1 of the decree.
 

 AFFIRMED in part, REVERSED in part.
 

 Judge HUNTER concurs.
 

 Judge TYSON concurs in the result only.
 

 [1]
 

 The allegation does not include the actual date of Mother's marriage to Mr. Kolczak. Even the trial court's finding of fact in the order on appeal simply notes the marriage occurred in January of 2014. Mother also admits in her brief that she married Mr. Kolczak in January of 2014. The Consent Order did not include any finding of fact about Mother's marital status other than her marriage to and separation from Father.
 

 [2]
 

 The order mistakenly includes two findings of fact numbered as 15. Based upon Mother's argument, this is the finding of fact 15 she challenges.
 

 [3]
 

 Although Father specifically asked for Mother to be held in civil contempt, not criminal, and the trial court found Mother in civil contempt, this situation may be better suited for criminal contempt. But neither party has addressed the possibility of criminal contempt, and we will not address this potential issue.
 

 [4]
 

 The concurring judge pointed out the obvious change created by the father's move to Hawaii: "The majority correctly states that a mere change in residency is not enough to constitute a substantial change of circumstances. However, on these facts I believe that the defendant has shown more than a mere change in residency. The record reveals that the trial court's original order called for the child to alternate her residence between parents at the end of every week. The court later altered this arrangement to every two weeks. However, even the most well-to-do individuals could not sustain this arrangement given that the defendant's new residence is more than 4,000 miles from Catawba County, North Carolina. The travel expenses alone for a transcontinental transfer every two weeks would be beyond the means of most people. This case presents a situation where the original order is not functional."
 
 Carlton
 
 ,
 
 145 N.C. App. at 260-61
 
 ,
 
 549 S.E.2d at 922
 
 (Eagles, Chief J., concurring).