IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-488

 No. COA19-866

 Filed 21 September 2021

 Mecklenburg County, No. 15CVD4500

 NICOLE J. BLANCHARD, Plaintiff,

 v.

 DAVID M. BLANCHARD, Defendant.

 Appeal by Defendant from order entered 2 April 2019 by Judge Paige B.

 McThenia in District Court, Mecklenburg County. Heard in the Court of Appeals 9

 June 2020.

 James, McElroy & Diehl, P.A., by Preston O. Odom, III, Jonathan D. Feit and
 Haley E. White, for plaintiff-appellee.

 Collins Family Law Group, by Rebecca K. Watts, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Defendant-Father appeals from the trial court’s order (the “Contempt Order”)

 holding him in civil contempt of provisions of a consent order regarding custody of the

 children (the “Custody Order”) involving communication between the children and

 Plaintiff-Mother when the children were in his care. On appeal Father has raised a

 constitutional due process argument claiming he did not have sufficient notice as to

 whether Mother sought to hold him in civil or criminal contempt as to specific

 allegations of violations of the Custody Order. We need not address this argument
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 because prior to hearing, Mother elected to proceed only as to civil contempt on two

 specific allegations, and the trial court heard and ruled on only these allegations.

 Father also contends the trial court erred by holding him in civil contempt and that

 the purge conditions were improper. Because the trial court’s findings of fact support

 its conclusions of law, the trial court did not err by holding Father in civil contempt.

 Because the trial court set forth clear and specific purge conditions, and these

 conditions are not modifications of the Custody Order, we affirm the trial court’s

 order. This opinion is filed contemporaneously with Father’s appeal of the trial

 court’s order awarding Mother attorney’s fees, COA20-165. The attorney’s fees order

 was entered after Father’s appeal of the Custody Order.

 I. Factual and Procedural Background

¶2 Mother and Father were married in 2007, had three children, and separated

 on 2 March 2015. Mother filed the complaint including a claim for custody on 6 March

 2015. The Custody Order was entered on 6 November 2015 and granted primary

 physical custody of the children to Mother and regular specific visitation to Father.

 The “General Provisions Governing Custody” section of the Custody Order also

 included a provision regarding daily telephone and FaceTime contact between the

 children and each parent when the children are with the other parent (the “FaceTime

 Provision”). Under the FaceTime Provision, “[e]ach party shall generally have

 unrestricted but reasonable telephone contact with the minor children. The parties
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 agree to make the minor children available to the non-custodial parent for phone or

 FaceTime contact for fifteen minutes each evening.”

¶3 Mother alleged that Father had been violating the FaceTime Provision in the

 Custody Order, and she filed a “Motion for Contempt” (the “Contempt Motion”) on 3

 January 2019, in which she moved the trial court to “[i]ssue a Show Cause Order,

 directing that a hearing be conducted . . . and, at such hearing, order Father to show

 cause as to why [he] should not be held in contempt for his violations of the Custody

 Order.” The Contempt Motion requested the trial court find Father in civil contempt,

 force Father’s compliance with the terms of the FaceTime Provision, and find him in

 criminal contempt, “as a result of his willful failure to comply with the provisions of

 the Custody Order as set forth” in the Contempt Motion. Mother also requested the

 trial court order “a reasonable attorney’s fee for all time and costs expended . . . in

 connection with the preparation, filing, and prosecution of” the Contempt Motion

 “and make such payment a purging condition of Father’s contempt[.]” Mother

 requested that the trial court “order Father to show cause as to why [he] should not

 be held in contempt for his violations of the Custody [O]rder[.]”

¶4 The trial court entered an Order to Show Cause (the “Show Cause Order”) on

 10 January 2019, in which it found “probable cause to believe that a civil and/or

 criminal contempt [by Father] has occurred, and a hearing should be conducted on

 the[] allegations” contained in Mother’s Contempt Motion. (Emphasis removed.)
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

Father was ordered to appear before the trial court on 12 February 2019 “and show

cause, if any, as to why [he] should not be held in contempt.” Father filed a Motion

to Dismiss and in the Alternative Motion for More Definite Statement (the “Motion

to Dismiss”) on 1 February 2019, in which Father requested that the trial court either

“dismiss with prejudice [the Contempt Motion] . . . on the basis of N.C.R.C.P. 12(b)(6),

N.C.G.S. 5A-23(g), and/or violation of [Father’s] constitutionally protected right to

due process of law pursuant to the 5th and 14th Amendments” or, in the alternative,

to grant Father’s “Motion for a More Definite Statement[.]” In Father’s motion, he

argued that Mother had “failed to state a claim upon which relief can be granted”—

contending that because “[a] person who is found in civil contempt under [] Article [2,

Chapter 5A] shall not, for the same conduct, be found in criminal contempt under

Article 1 of this Chapter[,]” N.C. Gen. Stat. § 5A-23(g) (2019), it was impossible for

him to know whether Mother’s motion to show cause, which included claims of both

civil and criminal contempt—based upon the same evidence—would result in a civil

contempt hearing or a criminal contempt hearing. Father’s requests were based on

his argument that Mother had not specifically stated in the Contempt Motion the

alleged violations of the Custody Order that would be pursued as civil contempt and

those that would be prosecuted as criminal contempt. Father contended that Mother

“not providing clear notice in the [Contempt Motion] nor the . . . Show Cause [Order]

prevents Father from having clear notice as to which form of contempt is sought and
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 makes Father susceptible to gross errors in the proceedings and his defenses in such

 proceedings; this violates Father’s right to due process.” Father filed a Motion to

 Continue (the “Motion to Continue”) one week later, arguing that he should be given

 time to argue the Motion to Dismiss before the hearing on the Contempt Motion.

 Father’s motions were heard and denied on 12 February 2019, just prior to

 commencement of the contempt hearing.

¶5 Father’s Motion to Continue was formally denied by order entered 15 February

 2019, and the trial court’s denial of the Motion to Dismiss was formally denied within

 the trial court’s 2 April 2019 Order (Re: Civil Contempt) (the “Contempt Order”). In

 the Contempt Order, the trial court found Father to be in violation of the Custody

 Order. The issue of attorney’s fees was reserved to be heard at a later date. Father

 appealed.

 II. Interlocutory Appeal

¶6 The Contempt Order on appeal is an interlocutory order as it does not resolve

 all pending claims. The appeal of a contempt order affects a substantial right and is

 immediately appealable. See Guerrier v. Guerrier, 155 N.C. App. 154, 158, 574 S.E.2d

 69, 71 (2002) (“The appeal of any contempt order, however, affects a substantial right

 and is therefore immediately appealable. Willis v. Power Co., 291 N.C. 19, 30, 229

 S.E.2d 191, 198 (1976); see Turner v. Norfolk S. Corp., 137 N.C. App. 138, 141, 526

 S.E.2d 666, 669 (2000)”).
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 III. Analysis

 A. Standards of Review

 The standard of review of orders from contempt
 proceedings is limited to determining whether competent
 evidence supports the findings of fact and whether those
 findings support the conclusions of law. Sharpe v. Nobles,
 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997). Where
 the admitted evidence supports the trial court’s findings,
 those findings are binding on appeal “even if the weight of
 the evidence might sustain findings to the
 contrary.” Hancock v. Hancock, 122 N.C. App. 518, 527,
 471 S.E.2d 415, 420 (1996). “[T]he credibility of the
 witnesses is within the trial court’s purview.” Scott v.
 Scott, 157 N.C. App. 382, 392, 579 S.E.2d 431, 438 (2003).

 Wilson v. Guinyard, 254 N.C. App. 229, 235, 801 S.E.2d 700, 705 (2017).

¶7 We also review de novo the trial court’s “apprehension of the law” to determine

 if the trial court considered the issues under the correct legal standards. See

 generally id. So long as the trial court applied the correct law in its analysis and

 ruling, we conduct the regular de novo review to determine if the trial court’s legal

 conclusions are supported by its findings of fact. Id.

 B. Due Process Requirements

¶8 In Father’s first argument, he contends that “[t]he trial court violated [his] due

 process rights by denying his request to be notified of the nature of the contempt

 charges prior to the beginning of the [contempt] hearing.” We disagree.

¶9 Father argues that “the trial court violated [Father’s] due process rights by

 denying his request to be notified of” the “criminal or civil nature of the allegations”
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 of “the contempt charges prior to the beginning of the hearing.” (Capitalization

 altered.) The sole allegation in Father’s argument is that the notice given to him

 failed to inform him whether each of Mother’s seven allegations of Father’s violation

 of the Custody Order would be pursued for civil contempt or would be prosecuted for

 criminal contempt; and that this alleged failure to provide Father proper notice

 violated his due process rights as guaranteed by the Constitution of the United

 States.

¶ 10 On 12 February 2019, just prior to the contempt hearing, Father argued that

 his motions to dismiss should be considered and decided before the contempt hearing

 and requested a continuance of the contempt hearing. Mother’s attorney informed

 the trial court that “we’ll probably have to bifurcate since there are some issues

 related to criminal and some issues related to civil [contempt,]” and Mother’s attorney

 estimated the hearing would take “an hour.” The trial court responded: “I think we

 can’t do anything over twenty minutes.” Mother’s attorney suggested “that we . . .

 pursue the civil contempt issue within the twenty minute rule, and if we don’t have

 time to hear the criminal we can find another date[.]”

¶ 11 Father’s attorney responded: “We were just told ten minutes ago . . . whether

 those [allegations] are civil or criminal.” Father’s attorney explained: “So there’s not

 [] sufficient notice, and Father is entitled to time to prepare an appropriate defense

 and address the matters specifically as criminal or specifically as civil[,]” because
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 the procedures for a civil trial and procedures for a criminal
 trial are very different, and the constitutional safeguards
 are very different. So it is Father’s fundamental
 constitutional right . . . to not to have yourself incriminated
 and right to not testify against yourself and the due process
 clause of the 14th Amendment as to know what procedures
 you’re going to go forward with before you get there.

¶ 12 More specifically, Father argued that Mother failed to state a claim “as she did

 not clearly state whether she [was] seeking to hold Father in civil contempt or

 criminal contempt for each individual allegation made” against Father. Father

 further alleged this lack of a more specific notice violated his rights under the Fifth

 and Fourteenth Amendments to the Constitution of the United States. Father stated:

 “For civil contempt, the [trial court] follows civil procedure[,]” whereas “[f]or criminal

 contempt, the [trial court] follows criminal procedure.” Father contended that

 because “[a] person cannot be held in both civil and criminal contempt[,]” he had “a

 right to know which type of contempt [was] sought before the hearing so that his

 defense [could] be properly made.”

¶ 13 The trial court asked Father: “But you’ve [been informed of] all of the

 allegations, correct?” (Emphasis added.) Father confirmed that he did, but again

 argued that Mother’s motion did “not specify whether they are civil contempt

 allegations or criminal contempt allegations.” (Emphasis added.)

¶ 14 The trial court denied Father’s Motion for Continuance by order entered 15

 February 2019. In the Contempt Order the trial court “denied . . . Father’s Motion to
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 Dismiss and Motion for More Definite Statement[,]” stating:

 After considering the arguments of counsel and the
 relevant case law presented, the [trial court] concluded
 that [Mother] was not required to elect civil or criminal
 contempt as to each alleged violation within a specified
 period of time prior to the contempt hearing; it is sufficient
 that the Order to Show Cause gave notice to [Father] that
 there was probable cause to believe a civil and/or criminal
 contempt had occurred based on the allegations in
 [Mother]’s Motion for Contempt.

¶ 15 Mother contends Father “failed to preserve his due process challenge for

 appellate review.” Mother notes that Father did not file a notice of appeal from either

 the trial court’s Order to Show Cause or the order denying his Motion to Continue,

 and argues that because he did not appeal from these orders, Father failed to preserve

 this issue for review. Mother also argues that prior cases have not required the

 moving party to elect either civil or criminal contempt before the hearing.

¶ 16 Both parties have made extensive arguments on the due process issue, but

 based upon the record before us, we need not address this issue because Father had

 proper notice of the alleged contemptuous actions, and the trial court only considered

 civil contempt at this hearing. Father argues Mother should have been required to

 elect before the hearing whether to pursue civil or criminal contempt, and although

 we do not address whether Mother was required by law to make this election, she did

 in fact inform Father, prior to the hearing, which allegations would form the basis of

 her action for civil contempt.
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

¶ 17 At the start of the hearing, due to the time constraints on the trial court,

 Mother elected to “pursue the civil contempt issue within the twenty-minute rule,

 and if we don’t have time to hear the criminal we can find another date.” In addition,

 the civil contempt hearing was limited to allegations contained in “paragraphs 5 and

 6 [of Mother’s] Motion for Contempt[.]”1 The trial court held Father in civil contempt

 based solely on his violations of the allegations of paragraphs 5 and 6 of the Contempt

 Motion—specifically, the trial court found that Father violated the provision in the

 Custody Order requiring each party to provide “Unrestricted Telephone Contact” by

 making “the minor children available to the non-custodial parent for phone or

 FaceTime contact for fifteen minutes each evening.” The Contempt Order is the only

 order before this Court on appeal.

¶ 18 Mother’s Contempt Motion and the Show Cause Order gave Father detailed

 notice of the factual allegations regarding his failure to allow phone or FaceTime

 access prior to the hearing, and the trial court only heard Mother’s claim of civil

 contempt regarding the allegations in paragraphs 5 and 6 of the Contempt Motion.

 Although the Contempt Motion did present other allegations of violations of the

 Custody Order, and in it Mother requested criminal contempt, the trial court did not

 address those issues at the contempt hearing or in the Contempt Order. Father’s

 1 The Contempt Motion included other alleged violations of the Custody Order in paragraphs

 3,4,7, and 8. These allegations were not addressed at the hearing or in the Contempt Order.
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 arguments ask this Court to speculate about issues which may have arisen if the trial

 court had denied his Motion to Continue and his Motion to Dismiss and then held a

 hearing on both civil and criminal contempt on all the allegations in Mother’s

 Contempt Motion. However, the hearing was “bifurcated,” and the trial court

 considered only civil contempt based on the two specifically identified allegations. We

 will address on appeal only the arguments based on the issues presented and decided

 at the hearing and included in the trial court’s order. Shell Island Homeowners Ass’n,

 Inc. v. Tomlinson, 134 N.C. App. 286, 291, 517 S.E.2d 401, 404–05 (1999) (“Courts

 have no jurisdiction to determine matters that are speculative, abstract, or moot, and

 they may not enter anticipatory judgments, or provide for contingencies which may

 arise thereafter.”). Our review is limited to the proceedings that actually occurred,

 are relevant to the trial court’s findings, conclusions, and rulings resulting in the

 Contempt Order, and the Contempt Order itself. We dismiss Father’s due process

 arguments.

 C. Compliance at Time of the Hearing

¶ 19 In his second argument, Father contends “the trial court erred in holding [him]

 in civil contempt when he was in compliance at the time of the hearing.” Father

 argues that “trial court’s own findings of fact show that [Father] was in compliance

 with the FaceTime access provisions of the custody order at the time of the hearing

 so he could not have been held in contempt.” Father contends that since Finding of
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 Fact 17 states that he had turned on the iPad from 6:00 p.m. to 6:30 p.m., he had

 complied with the Custody Order, stating “the trial court erred in holding [him] in

 civil contempt when he was in compliance at the time of the hearing.” We disagree.

¶ 20 The trial court found these facts relevant to Father’s argument:

 4. The Custody Order provides, among other things, as
 follows:

 C(g). Unrestricted Telephone Contact. Each party shall
 generally have unrestricted but reasonable telephone
 contact with the minor children. The parties agree to
 make the minor children available to the non-custodial
 parent for phone or FaceTime contact for fifteen
 minutes each evening.

 ....

 12. Since the entry of the Custody Order, [Father] has
 willfully violated the terms of the Custody Order by
 willfully failing to provide [Mother] with FaceTime access
 to the minor children during his periods of custodial time.

 13. On April 28, 2018, three (3) days after getting
 remarried, [Father] emailed [Mother] informing her that
 he set up the minor children’s iPad for FaceTime so that
 [Mother] could FaceTime the minor children directly, and
 that he would ensure that the iPad was turned on and
 charged. Prior to this, [Mother] sent and received
 FaceTime calls with the minor children through [Father]’s
 phone.

 14. On April 29, 2018, [Father] blocked [Mother]’s phone
 number from his cell phone. As a result, email was
 [Mother]’s only means of communication with [Father],
 and the only way she could request FaceTime calls with the
 minor children when her calls to the minor children’s iPad
 went unanswered. Since that time, [Father] has
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 continuously ignored [Mother]’s repeated requests to
 FaceTime the minor children during [Father]’s custodial
 time, despite [Mother] informing [Father] that her calls to
 the minor children’s iPad had gone [un]answered.

 15. From April 30, 2018 through September 2018, [Mother]
 called the minor children’s iPad at least sixty four (64)
 times, but none of her calls were answered. During this
 time, [Father] only allowed [Mother] FaceTime access to the
 minor children on three (3) occasions.

 16. Beginning in or around September 2018, [Mother] could
 no longer FaceTime the minor children’s iPad from her
 phone because the children’s iPad was either turned off, not
 connected to WiFi, or FaceTime was disabled.

 17. [Father] arbitrarily chose to turn the minor children’s
 iPad on each evening from 6:00 p.m. to 6:30 p.m. without
 informing [Mother] that she should call during that thirty
 (30) minute time period. From May 2018 through the
 hearing of this Motion, [Mother] sent numerous text
 messages and emails to [Father] asking to FaceTime the
 minor children. [Father] did not respond to any of
 [Mother]’s FaceTime requests.

 18. On one occasion, after [Mother] requested a FaceTime
 call with the minor children, [Father] sent her a copy of his
 marriage license. [Father] saved [Mother]’s contact
 information in his phone as “Psycho Bitch.” This conduct
 evidences the willful nature of [Father]’s failure to allow
 [Mother] FaceTime access to the minor children.

 19. [Mother]’s counsel wrote [Father]’s counsel on seven (7)
 occasions [between 25 June 2018 and 2 November 2018]
 regarding [Father]’s refusal to allow [Mother] to FaceTime
 the minor children. Despite [Mother]’s counsel’s efforts,
 [Father] continued to deny [Mother] FaceTime access to the
 minor children.

(Emphasis added.)
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

¶ 21 Father does not challenge the findings of fact as unsupported by the evidence

 but argues that the findings demonstrate that because he had the children’s iPad on

 each evening from 6:00 p.m. to 6:30 p.m., he complied with the terms of the Custody

 Order. Father’s argument takes a portion of finding 17 out of context in order to

 argue it was made in error, asserting the “[b]ecause the [trial] court specifically found

 that [Father] was providing access between 6 p.m. and 6:30 p.m., finding 12 that

 [Father] has failed to provide access must be interpreted as” a finding that Father

 was in compliance with the FaceTime Provision at the time of the contempt hearing.

 The full sentence in finding 17 reads: “Father arbitrarily chose to turn the minor

 children’s iPad on each evening from 6:00 p.m. to 6:30 p.m. without informing

 [Mother] that she should call during that thirty (30) minute time period.” (Emphasis

 added.) Without citation to the transcript, Father also argues that “[t]he

 uncontroverted testimony was that a week or two before trial, Father made Mother

 aware of the accessibility window, and that Father had had the children available

 during that time.” But it is the trial court that determines the credibility and weight

 of the evidence and, here, the trial court found Mother’s evidence of Father’s refusal

 to respond to her many requests regarding her inability to contact the children more

 credible than Father’s contentions to the contrary.

¶ 22 At the hearing, Father contended that the Custody Order does not “direct a

 specific time for the facetime to occur[,]” only that Father ensure “availability for
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 fifteen minutes in the evening[.]” Father contends that the thirty minute window in

 which he claimed to have made the iPad available for FaceTime calls—from 6:00 p.m.

 to 6:30 p.m.—proved his compliance with the specific language of the Custody Order.

 Father is correct that the Custody Order did not specify an exact time for the contact,

 but it did provide for “unrestricted but reasonable telephone contact” and for the

 parties “to make the minor children available to the non-custodial parent for phone

 or FaceTime contact for fifteen minutes each evening.” (Emphasis added.) Both

 parties understood the Custody Order and what was required to follow it in good

 faith. See Middleton v. Middleton, 159 N.C. App. 224, 226, 583 S.E.2d 48, 49 (2003).

¶ 23 The trial court’s findings addressed the changes in Father’s compliance with

 the Custody Order following his remarriage:

 [T]hree (3) days after getting remarried, [Father] emailed
 [Mother] informing her that he set up the minor children’s
 iPad for FaceTime so that [Mother] could FaceTime the
 minor children directly, and that he would ensure that the
 iPad was turned on and charged. Prior to this, [Mother]
 sent and received FaceTime calls with the minor children
 through [Father]’s phone.

 14. On April 29, 2018, [Father] blocked [Mother]’s phone
 number from his cell phone.

¶ 24 After blocking Mother’s phone number from his phone, Father was repeatedly

 informed and was well-aware that Mother had not been able to contact the children,

 but he still refused to make the children available as required by the Custody Order.
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 Father argues that the trial court’s other findings, such as Father blocking Mother’s

 number from his phone, sending Mother a copy of his marriage license, and saving

 Mother’s contact information in his phone as “psycho Bitch,” are irrelevant to the

 question of whether he complied with the Custody Order. But these findings are

 relevant, as they demonstrate why Father suddenly began to block Mother’s phone

 calls. This was not a random technological glitch or a few missed calls; Father’s

 actions, as found by the trial court, demonstrate exactly why Father intentionally

 changed the method of communication, and thus show the willfulness of his actions.

¶ 25 Clearly, the trial court did not find Father’s testimony that he was unaware of

 any problems regarding phone or FaceTime contact credible, as it included the

 following findings—unchallenged by Father—in the Contempt Order: “Father has

 continuously ignored [Mother]’s repeated requests to FaceTime the minor children

 during Father’s custodial time, despite [Mother] informing Father that her calls to

 the minor children’s iPad had gone [un]answered[;]” “[Mother] called the minor

 children’s iPad at least sixty four (64) times, but none of her calls were answered.

 During this time, Father only allowed [Mother] FaceTime access to the minor

 children on three (3) occasions[;]” “[b]eginning . . . around September 2018, [Mother]

 could no longer FaceTime the minor children’s iPad . . . because the children’s iPad

 was either turned off, not connected to WiFi, or FaceTime was disabled[;]” “[f]rom

 May 2018 through the hearing of this Motion, [Mother] sent numerous text messages
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 and emails to Father asking to FaceTime the minor children. Father did not respond

 to any of [Mother]’s FaceTime requests[;]” “[Mother]’s counsel wrote Father’s counsel

 on seven (7) occasions [between 25 June 2018 and 2 November 2018] regarding

 Father’s refusal to allow [Mother] to FaceTime the minor children. Despite [Mother]’s

 counsel’s efforts, Father continued to deny [Mother] FaceTime access to the minor

 children[;]” and “Father arbitrarily chose to turn the minor children’s iPad on each

 evening from 6:00 p.m. to 6:30 p.m. without informing [Mother] that she should call

 during that thirty (30) minute time period.” (Emphasis added.)

¶ 26 These and other findings demonstrate the trial court considered, but rejected,

 Father’s testimony (1) that he was unaware of Mother’s FaceTime concerns and

 difficulties, (2) that he did not believe Mother had tried to FaceTime the children in

 the time period between her filing of the Contempt Motion and the contempt hearing,

 and (3) that he had never “purposely denied facetime” or “phone contact” between the

 children and Mother. Concerning Father’s testimony regarding “phone contact,” the

 trial court also found as fact, unchallenged by Father: “On April 29, 2018, Father

 blocked Mother’s phone number from his cell phone. As a result, email was Mother’s

 only means of communication with Father” by which “she could request FaceTime

 calls with the minor children when her calls to the minor children’s iPad went

 unanswered.”

¶ 27 Father’s argument relies upon the unsupported contention that he can engage
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 in conduct that contravenes the clear intention of the Custody Order, so long as the

 Custody Order did not specifically name the precise means by which Father was

 required to comply with its obvious purpose. However, as this Court has noted:

 Our Supreme Court, in determining whether a party was
 in contempt for violating a temporary restraining order,
 stated that “‘[t]he order of the court must be obeyed
 implicitly, according to its spirit and in good faith.’” A
 party “‘must do nothing, directly or indirectly, that will
 render the order ineffectual, either wholly or partially so.’”

 Middleton, 159 N.C. App. at 226, 583 S.E.2d at 49 (emphasis added) (citations

 omitted). Implicit in every order is the understanding that its terms will be honored

 in good faith—that the parties bound by it will act under the dictates of common sense

 and reasonableness. See, e.g., American Tel. & Tel. Co. v. Griffin, 39 N.C. App. 721,

 726, 251 S.E.2d 885, 888 (1979) (finding contempt where the contemnor’s acts

 violated the “spirit” of the order).

¶ 28 Although the Custody Order did not set out the details of the “unrestricted

 Telephone Contact” between the parties and children, for about three and one-half

 years after the entry of the Custody Order, the parties had developed a method of

 communication and used it consistently until immediately after Father’s

 remarriage—when he unilaterally changed how Mother could contact the children,

 and refused to respond to Mother’s notifications that she was unable to do so.

¶ 29 We hold that the evidence supports all of the trial court’s findings of fact,
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 including finding of fact 12, and the findings support the trial court’s ultimate

 findings and conclusions that the Custody Order was still “valid and enforceable[,]”

 that the purposes “of the Custody Order may still be served by Father[‘s] compliance”

 with the “Unrestricted Telephone Contact” provision, that Father had “at all times,

 been fully aware of the Custody Order” and its requirements, that Father “has had

 the ability to comply with the Custody Order[,]” and, therefore, that “Father[’s]

 failure to comply with the terms of the Custody Order as set forth [in the telephone

 and FaceTime provisions] is willful and constitutes a civil contempt of Court.” This

 argument is without merit.

 D. Purge Conditions

¶ 30 Father argues that even if he was properly found to be in civil contempt, the

 purge conditions in the Contempt Order were “improper” and, therefore, “the

 [C]ontempt [O]rder should be vacated.” We disagree.

¶ 31 The trial court’s decree set out the purge conditions:

 4. [Father] has the present ability to comply with the terms
 of the Custody Order. [Father] may purge himself of the
 contempt by unblocking Mother’s number from his cell
 phone so that she can call or text Father to arrange a time
 for Mother to visit with the minor children via FaceTime;
 install FaceTime on the children’s [iP]ad and ensure that
 it is functioning properly; ensure that the children’s [iP]ad
 is charged and connected to Wifi so that Mother can
 FaceTime with the children on the [iP]ad; and, if the
 children’s [iP]ad is not functioning, allow the children to
 FaceTime with Mother on Father’s phone.
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 5. The [trial court] recognizes that the purpose of civil
 contempt is to obtain compliance with a court order and
 that the only sanction for civil contempt is imprisonment
 until a defendant complies with that order. The [trial
 court] also recognizes that [Father’s] present ability to
 comply with the terms of the Custody Order requires that
 [he] be present in the home for a period of time to install
 FaceTime on the children’s [iP]ad, ensure that it is
 functioning properly, and ensure that the children’s [iP]ad
 is charged and connected to Wifi (or arrange for someone
 else to perform these tasks on his behalf), and that [Father]
 must have actual possession of his phone in order to
 unblock Mother’s number and arrange a time for her to
 contact the children. The [trial court,] therefore, is
 postponing [Father’s] report date to the Mecklenburg
 County Jail until April 12, 2019 in order to allow [Father]
 the opportunity to take the necessary steps to purge
 himself of the contempt and thus come into compliance
 with the terms of the Custody Order. Prior to [Father]
 being taken into custody, this [c]ourt shall hear briefly
 from the parties about the actions [he] has taken to purge
 himself of contempt. The [trial court] shall conduct a
 review hearing on April 10, 2019 from 12:00 to 12:15 p.m.

¶ 32 Father first contends that “[t]he purge conditions do not set a date by which

 [Father] will have purged himself of contempt and so the contempt order should be

 vacated.” (Emphasis added.) Father also contends that the purge conditions are

 improper because the order “sentences [Father] to jail without the appropriate

 findings that he has the ability to purge contempt and avoid incarceration.” Father

 contends the improper purge conditions were the ones requiring him to “unblock[]

 Mother’s number from his cell phone[,]” “install[] FaceTime on the children’s [iP]ad[,]
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 and ensure that it is functioning properly.”

¶ 33 “A contempt order ‘must specify how the person may purge himself of the

 contempt.’ N.C. Gen. Stat. § 5A–22(a)[.]” Wellons v. White, 229 N.C. App. 164, 181,

 748 S.E.2d 709, 722 (2013). Citing Wellons, Father argues that “[t]he purge

 conditions must specify when compliance has purged the contempt—a party may not

 be held in contempt indefinitely.” Father appears to interpret Wellons as containing

 a holding from this Court that if “the purge conditions . . . do not set a date by which

 [a contemnor] purge will be complete, the contempt order should be vacated.” Father

 is incorrect. In Wellons, the trial court held: “[T]he district court erred by failing to

 provide [the contemnor] a method to purge his contempt.” Id. at 182, 748 S.E.2d at

 722. This Court then set forth the deficiencies of the contempt order:

 On 5 July 2012, the district court “declared [the contemnor]
 to be in direct and [willful] civil contempt of the prior
 Orders of the Court.” It suspended [the contemnor]’s arrest
 based on the following condition: “[The contemnor] can
 purge his contempt by fully complying with the terms of
 the [30 March 2012] Interim Order, the prior Orders of 28
 December 2007 and 27 July 2010. and this Order.” The
 order did not establish a date after which [the contemnor]’s
 contempt was purged or provide any other means for
 [the contemnor] to purge the contempt.

 Id. (emphasis added). In Wellons, we simply held that the purge conditions in the

 contempt order “were ‘impermissibly vague[,]’” id., because they did not clearly

 inform the contemnor what actions he had to undertake to purge his contempt and
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 secure his release—therefore, it was possible the contemnor could be held

 indefinitely, with no meaningful way to purge his contempt. In Wellons, the trial

 court did not clearly state the purge conditions, it simply required the contemnor to

 comply with the prior court orders indefinitely—so in that case the contemnor would

 never be able to purge the contempt as long as the orders were in effect. Id.

¶ 34 In Kolczak v Johnson, 260 N.C. App. 208, 817 S.E.2d 861 (2018), this Court

 reversed a civil contempt order based upon the mother’s violation of visitation

 provisions of a custody order. Id. at 220, 817 S.E.2d at 869. In Kolcazk, the order set

 forth several conditions for the mother’s visitation, including not allowing the

 children to have any contact whatsoever with her new husband, who had been

 involved in and arrested for various crimes, or his criminal associates. Id. at 213, 817

 S.E.2d at 865. The mother was also required to notify the father within 24 hours if

 she or her new husband were arrested again; he was arrested again, and the mother

 did not properly notify the father. Id. The trial court found that mother was in

 contempt of the order for her failure to notify the father of an arrest and allowing her

 husband to be present at her residence when the children were there, as well as

 registering the children in a summer camp without consulting the father in violation

 of first-refusal provisions. Id. The contemptuous actions all arose from visitation

 provisions of the custody order, and all were discrete incidents which had occurred in

 the past. Id. Although the trial court held the mother in civil contempt, the order
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 did not include any purge condition. Id.

¶ 35 In Kolczak, this Court discussed the difficulty of creating an appropriate purge

 condition in this situation:

 [I]n this case, the contempt is primarily based upon
 communication and visitation provisions of the orders, not
 child support. It is not apparent from the order how an
 appropriate civil contempt purge condition could “coerce
 the defendant to comply with a court order” as opposed to
 punishing her for a past violation. Wellons v. White, 229
 N.C. App. 164, 181, 748 S.E.2d 709, 722 (2013). And here
 the trial court did not order vague purge conditions; it
 ordered none at all.

 We believe this case is more similar to Wellons than
 Lueallen. Compare Lueallen, 790 S.E.2d 690; Wellons, 229
 N.C. App. 164, 748 S.E.2d 709. In Wellons, the Court
 addressed a father’s denial of the grandparent’s visitation
 privileges established by a prior order. See Wellons, 229
 N.C. App. at 165, 748 S.E.2d at 711. In Wellons, the trial
 court held the father in civil contempt for denial of
 visitation and ordered that he comply with the terms of the
 prior orders as a purge condition, but this Court reversed
 the contempt order[.]

 ....

 We have previously reversed similar contempt orders. For
 instance, in Cox a contempt order stated the defendant
 could purge her contempt by not:

 placing either of the minor children in a stressful
 situation or a situation detrimental to their welfare.
 Specifically, the defendant is ordered not to punish
 either of the minor children in any manner that is
 stressful, abusive, or detrimental to that child.

 There, we reversed because the trial court failed to clearly
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 specify what the defendant can and cannot do to the minor
 children in order to purge herself of the civil contempt.

 Similarly, in Scott a contempt order stated: Defendant may
 postpone his imprisonment indefinitely by (1) enrolling in
 a Controlled Anger Program approved by this Court on or
 before August 1, 2001 and thereafter successfully
 completing the Program; (2) by not interfering with the
 Plaintiff’s custody of the minor children and (3) by not
 threatening, abusing, harassing or interfering with the
 Plaintiff or the Plaintiff’s custody of the minor children.

 There, although we indicated the requirement to attend a
 Controlled Anger Program may comport with the ability of
 civil [violators] to purge themselves, we reversed because
 the other two requirements were impermissibly vague.

 In the case at hand, the district court did not clearly specify
 what Mr. White can and cannot do to purge himself of
 contempt. Although the district court referenced previous
 orders containing specific provisions, it did not: (i) establish
 when Mr. White’s compliance purged his contempt; or (ii)
 provide any other method for Mr. White to purge his
 contempt. We will not allow the district court to hold Mr.
 White indefinitely in contempt. Consequently, we reverse
 the portion of the 5 July 2012 order holding Mr. White in
 civil contempt.

 Id. at 219–20, 817 S.E.2d at 868–69. Unlike Kolczak or Wellons, here the trial court

 did “clearly specify what [Father could] do to purge himself of contempt.” Id.

¶ 36 In the order on appeal, the trial court acknowledged the difficulty in

 constructing a purge condition in a contempt order for a refusal to comply with an

 order regarding visitation, which is always an ongoing obligation. Unlike Kolzcak,

 id., here the trial court’s order clearly sets forth exactly what Father needed to do to
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 purge himself of contempt: he had to set up FaceTime on the children’s iPad to allow

 Mother the communication with the children set out in the Custody Order. Since he

 could not personally accomplish this task while in jail, the trial court allowed him

 time to take the specific steps set out in the order. In this type of situation, the trial

 court must tailor the purge conditions to the needs of the particular case

¶ 37 Here, the trial court postponed Father’s time to report to the jail to April 12,

 2019 to allow time for him to take “the necessary steps to purge himself of the

 contempt and thus come into compliance with the terms of the Custody Order.” The

 trial court also set a time for a “review hearing” on April 10 to “hear briefly from the

 parties about the actions Father] has taken to purge himself of contempt.”2

¶ 38 Father argues the trial court’s order is internally contradictory because the

 order acknowledges that “if Father is in jail he cannot purge by complying” and to

 remedy the “apparent contradiction, the trial court ‘delays’ the report to jail date to

 allow him time to comply.” But if Father had not complied with the purge condition

 by April 10, at the review hearing, Father would then go to jail and would have no

 ability to purge the contempt.

¶ 39 Although the trial court did allow Father the time to purge himself of contempt

 2 The trial court rendered its order at the close of the hearing on 12 February 2019. In open
 court, the trial court informed the parties of the purge conditions and that Father would have
 “two months” to take the actions needed “to make it possible that [Mother] has contact with”
 the children. The written and signed Contempt Order was filed on 2 April 2019.
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

by setting up the children’s iPad properly and thus avoid reporting to jail, the trial

court’s order is not internally contradictory. In fact, the trial court set out exactly

what Father would need to do to purge the contempt and allowed him time to take

these actions personally, but the order also noted that Father could “arrange for

someone else to perform these tasks on his behalf.” In this manner, the trial court’s

purge provisions are similar to those often imposed in civil contempt orders for

nonpayment of child support. A contemnor may be held in civil contempt and

imprisoned immediately, with a purge condition of payment of a sum of money. Once

the contemnor is in jail, he must arrange for payment of the amount set as the purge

condition to purge the contempt and be released from jail. If the contemnor has

sufficient cash in his physical possession to pay the purge payment immediately, he

can immediately purge the contempt and not be imprisoned. But if the contemnor

does not have sufficient cash in his physical possession to pay the purge payment and

the contempt order directs that he be immediately taken into custody, he will be

imprisoned and, in jail, he does not have the ability to personally go to get the funds

to pay the purge payment—even if he has those funds readily available at home or in

a bank account. But from jail, he can contact another person—a friend, a family

member, his banker, or his attorney—to arrange for someone else to retrieve his

funds and make the purge payment. In this respect, the trial court’s purge conditions

here are quite similar to those commonly imposed in cases where a financial purge
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 payment is ordered—though, unlike payment of past due child support, there is no

 way to quantify a loss of past visitation and no way to replace the missed

 communications between a parent and her children. The trial court noted this

 problem:

 The Court recognizes that the purpose of civil contempt is
 to obtain compliance with a court order and that the only
 sanction for civil contempt is imprisonment until a
 defendant complies with that order. The Court also
 recognizes that [Father’s] present ability to comply with
 the terms of the Custody Order requires that [Father] be
 present in the home for a period of time to install FaceTime
 on the children’s iPad, ensure that it is functioning
 properly, and ensure that the children’s iPad is charged
 and connected to Wi-Fi (or arrange for someone else to
 perform these tasks on his behalf), and that [Father] must
 have actual possession of his phone in order to unblock
 Mother’s number and arrange a time for her to contact the
 children.

¶ 40 The trial court gave Father time to set up the children’s iPad properly before

 reporting to jail, and if he took the actions directed by the order, he would not have

 to report to jail. If he failed to take these actions personally and was imprisoned, he

 could still “arrange for someone else to perform these tasks on his behalf.” Either

 way, Father had the “present ability” to comply with the Custody Order and with the

 purge conditions in the Contempt Order. Thus, the order is not internally

 contradictory.

¶ 41 Father also argues that although paragraphs 5 “seems to say that April 10 is
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 the day upon which purge is complete,” “paragraph 4 talks about an ongoing

 obligation. Essentially, paragraph 4 tells him to come into compliance and stay in

 compliance with the terms of the custody order.” In this regard, Father argues this

 order is like the order in Wellons and is thus improper. See Wellons, 229 N.C. App.

 at 182, 748 S.E.2d at 722. But we do not read the Contempt Order as requiring

 indefinite compliance with the Custody Order as a purge condition. Paragraph 4

 simply sets out the specific conditions which would need to exist to allow the

 communications between Mother and the children as directed by the Custody Order,

 while paragraph 5 sets out the specific time for the review hearing, based upon the

 trial court’s decision to give Father the opportunity to return to his home and set up

 the iPad personally. Apparently, Father did not appreciate the trial court extending

 him this opportunity and would have preferred immediate imprisonment, so he could

 then write a letter or make a phone call from jail to “arrange for someone else to

 perform these tasks on his behalf.” But the trial court was within its discretion to

 give Father this opportunity to purge his contempt before having to report to jail.

 E. Amending the Custody Order

¶ 42 Father’s last argument is that the “purge conditions improperly modify the

 parties’ custody order.” He contends:

 In setting its purge conditions, the trial court required
 [Father] to unblock [Mother] from his phone. The court
 also required [Father] to arrange [Mother]’s FaceTime
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 windows with [Mother]. The parties’ custody order does
 require some communication (e.g. consultation on legal
 custody issues, notification of certain things), but the order
 does not require that the parties communicate by
 telephone. The order also does not provide that the parties
 must consult to determine when [Mother] can FaceTime
 the children. By requiring [Father] to unblock [Mother]
 from his phone and to engage in regular (daily?)
 communication with [Mother] to arrange each FaceTime
 event, the trial court improperly modified the parties’
 custody order, and those provisions of the order should be
 vacated.

¶ 43 Father is correct that the Custody Order did not set out exact times and

 methods for the “Unrestricted Telephone Communication” between the parties and

 children, but it did provide that “[e]ach party shall generally have unrestricted but

 reasonable telephone contact with the minor children. The parties agree to make the

 minor children available to the non-custodial parent for phone or FaceTime contact

 for fifteen minutes each evening.” The purge conditions in the Contempt Order do

 not change this provision of the Custody Order but only set out the actions Father

 must take to purge the contempt by setting up the iPad in a manner to allow the

 reasonable contact directed by the Custody Order.

¶ 44 The purge provisions here are comparable to those in Wilson v. Guinyard, 254

 N.C. App. 229, 801 S.E.2d 700 (2017). In Wilson, the mother lived in North Carolina

 and the father in South Carolina. Id. at 230, 801 S.E.2d at 702. The custody order

 provided for the parties to meet at “South of the Border Amusement Park” to
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 exchange the child for visitation. Id. The order also set out times for the exchanges

 but required each party to notify the other of delays in travel “due to unforeseen

 circumstances.” Id. The mother filed a motion for contempt alleging the father was

 “habitually late” without valid reasons and on at least one instance the child missed

 a day of school after the father had missed a scheduled exchange. Id. at 231, 801

 S.E.2d at 702. At the hearing, she presented evidence the father was late to over

 forty exchanges, sometimes up to two hours late. Id. at 231, 801 S.E.2d at 702–03.

 The trial court held the father in civil contempt and set as purge conditions that the

 “[d]efendant could purge himself of contempt by both picking up and dropping off

 their son in Durham for the next three weekend visits. The Court further provided

 that if the defendant was more than thirty minutes late to either pick up or drop off

 [the child], a weekend visitation would be forfeited.” Id. at 238, 801 S.E.2d at 706.

¶ 45 This Court held the purge conditions requiring the father to exchange the child

 at a different location than established by the custody order for “the next three

 weekend visits” and for forfeiture of a visit for being more than 30 minutes late was

 not a modification of the custody order:

 These provisions do not constitute a modification of
 custody. See Tankala v. Pithavadian, __ N.C. App. __, __,
 789 S.E.2d 31, 33 (2016) (holding a trial court’s order
 providing additional dates and locations for custodial
 visitation not inconsistent with the governing child custody
 order is not a modification of the terms of custody).
 BLANCHARD V. BLANCHARD

 2021-NCCOA-488

 Opinion of the Court

 Permanent joint legal custody and secondary physical
 custody remained with Defendant both before and after the
 contempt order. These provisions more specifically identify
 what Defendant can and cannot do regarding the visitation
 times in order to purge himself of the civil contempt and
 insure [sic] Defendant’s compliance with the previous court
 orders. See Cox, 133 N.C. App. at 226, 515 S.E.2d at 65;
 Scott, 157 N.C. App. at 394, 579 S.E.2d at 439. The trial
 court did not improperly modify custody or impose
 improper purge conditions.

 Id.

¶ 46 As in Wilson, the trial court’s purge conditions set out requirements for Father

 to purge the civil contempt and the conditions are consistent with the Custody Order.

 Id. The purge provisions of the Contempt Order apply only until Father has taken

 the actions required to purge the contempt. The Contempt Order does not modify the

 Custody Order. This argument is without merit.

 IV. Conclusion

¶ 47 The trial court acted reasonably and within its discretion. “The [Contempt

 O]rder provides flexibility for unusual circumstances . . . , which [Father] clearly and

 repeatedly abused.” Wilson, 254 N.C. App. at 237, 801 S.E.2d at 706. For the reasons

 discussed above, we affirm.

 AFFIRMED.

 Judge TYSON and COLLINS concur.